### HANSON v. UNITED STATES.
### No. 11731.

United States Court of Appeals,
Sixth Circuit.

Dec. 21, 1953.

William A. Belt, and Dan H. McCullough, Toledo, Ohio, for appellant.

Gerald P. Openlander, Asst. U. S. Atty., Toledo, Ohio (John J. Kane, Jr. U. S. Atty., Cleveland, Ohio, on the brief), for appellee.

Before MARTIN, McALLISTER and MILLER, Circuit Judges.

PER CURIAM.

Appellant was convicted by a jury of knowingly and willfully attempting to defeat and evade the payment of personal income taxes. On appeal, we are pri-

marily concerned with two claimed errors on the trial—the refusal of the trial court to permit certain evidence to be introduced in defense of the charge against the accused, and refusal to instruct the jury as requested.

Appellant was the owner of 1118 shares of a total of 1247 shares of the common stock of the Hanson Clutch and Machinery Company. His sister and two brothers-in-law owned 125 shares, and the balance of 4 shares was owned by two other men. Appellant was also the owner of all of the preferred stock of the corporation. An agent of the Bureau of Internal Revenue, Gregory Susko, in checking the books of the corporation, was informed by appellant that in its sales, the corporation issued three types of invoices: "E" invoices for excavators; "C" invoices for clutches; "R" invoices for repairs; and he was further advised that these were the only designations used for invoices on sales by the company. Thereafter, Agent Susko, with a commendable, and remarkable, awareness of his duties, noticed that a certain contractor, Kranz, was using a new Hanson shovel. He thereupon checked the books of the Hanson Company and found that there was no record of the sale of this shovel to Kranz. He interviewed Mr. Kranz and obtained from him the original invoices of the Hanson Clutch and Machinery Company which covered the sale of the shovel to him. At that time, he noticed that the invoice number on the Kranz transaction was M–93. He then called upon the sales manager and chief bookkeeper of the Hanson Company, as well as Mr. Hanson, and inquired whether there were any invoices of the Hanson Clutch and Machinery Company which bore the designation "M." He was told by each of these men that there were no such invoices. Thereafter, the bookkeeper of the company, in response to a subpoena, appeared before the Intelligence Unit of the Treasury Department at Toledo and gave testimony in which he stated that there were numerous sales on which "M" invoices were issued, and

that there were possibly several reasons for issuing them, one being to conceal the fact that the company had sold certain materials in violation of the Controlled Materials Plan, provided for by federal statute to conserve materials for government use during the war period. In order to secure such materials for private use, individuals were obliged to procure a priority number from the government. The evidence in the case discloses that appellant Hanson, sometime in 1945, commenced to sell metal products to certain of his customers who had no priority number. The company issued so-called "M" invoices in such sales, which eventually amounted to large sums of money. If these sales showed on the company's books, it would be obvious to anyone inspecting them that the company or its officials were guilty of violation of the Controlled Materials law. In order to avoid violation of the income tax laws on the part of the corporation, it was decided not to enter these sales, as sales, but to record them as items in inventory, not at cost, but at sales price, inasmuch as it is admitted that by placing them in the inventory at sales price rather than at cost price, the profits on the sales would be reflected upon the books of the company so that, at the end of the year when the income tax return was made up for the company, the tax on such profits would be paid even though the transactions had not been entered as sales; and all of the income taxes of the company were duly paid. The checks which were received on these sales, on "M" invoices, were endorsed for deposit only and Mr. Hanson cashed them through some banking arrangement. If, in addition to placing the items so sold in the inventory at sales price, Hanson had turned the money over to the company, the corporate income would have been overstated, and a double tax on such profits would have resulted. He kept the cash in his possession. He testified that he had not only discussed the transaction with his bookkeeper but with the board of directors, consisting of his sister, his mother, and his brothers-in-law, Mr. John Reed and Mr. Sherman

White. Mr. Reed testified that Mr. Hanson told them that the money was to be held until it could be properly entered on the books of the company, after the danger of prosecution for violation of the priority regulations had passed. However, before the period of limitations had elapsed for prosecution of the priority violations, the income tax investigation had begun, and appellant's lawyer, Mr. Raymond, told him he should not at that time return the funds to the company as it might indicate some "sense of guilt" or evidence of income tax evasion.

 Mr. Hanson claimed to be holding this money for the company. The government claimed it was his personal income which he had not reported. The crucial point in the case arose when the court refused to permit evidence to be introduced that all the items on the "M" invoices had been posted on the books of the company in inventory at sales prices. We are of the opinion that this was reversible error as it deprived appellant of the one explanation he had why the money claimed by the government to be his unreported income was not his money, but belonged to the company, and that he was, in a sense, only a trustee, or holder of the funds for the benefit of the company. All of the sales on the "M" invoices in question involved priority violations which appellant sought to conceal. Carrying such sales on the books of the company on closing inventory at sales prices reflected the profits on the "M" sales, actually made, on the company books. Appellant was entitled to have such evidence submitted to the jury on the issue whether the money represented by such items, entered in the books as inventory at sales prices, was money belonging to the company which he was holding for it, or whether it was his own personal income.

Appellant requested the trial court to charge the jury that where circumstantial evidence is relied on, the evidence must be such as to exclude every other reasonable hypothesis except the hypothesis of guilt. Stated in slightly changed form, "where guilt depends entirely upon circumstantial evidence, * * * the burden rests upon the government to prove its case not only beyond a reasonable doubt but to the exclusion of every reasonable hypothesis of innocence." Epstein v. United States, 6 Cir., 174 F.2d 754, 769. The trial court instructed the jury on proof of guilt beyond a reasonable doubt, but not as to proof by circumstantial evidence to the exclusion of every reasonable hypothesis of innocence. As a result, the appellant's rights were not sufficiently stated by the general charge. See Hendrey v. United States, 6 Cir., 233 F. 5, 19.

The judgment is reversed and the case is remanded to the District Court for a new trial.