**UNITED STATES of America
Plaintiff,**
v.
**Benjamin GLAZER, Defendant.
Crim. A. No. 915.**

United States District Court,
D. Delaware.
March 4, 1955.

Leonard G. Hagner, U. S. Atty., and Newton White, Asst. U. S. Atty., Wilmington, Del., for the United States.

Robert C. Barab, Wilmington, Del., for defendant.

LEAHY, Chief Judge.

Defendant Benjamin Glazer was tried for attempting to bribe in violation of 18 U.S.C.A. § 201.[1] Defendant at trial moved under Criminal Rule 29(b), 18 U.S.C., after the Government rested for the entry of a judgment of acquittal. Decision by the court was reserved. After both sides rested, the motion was renewed before charge and was renewed after the verdict of guilty. The ruling here is on the motion for judgment of acquittal.

■ 1. To protect the public from evil consequences of corruption in public service the Congress crystallized in statute form what was punishable at common law. The elements of the crime embodied in § 201 which the Government was required to prove are:

a. An offer to bribe;

b. Such offer was made to an officer of the United States or a person at the time acting for or on behalf of the United States in an official function;

c. The offer was made to influence the officer or person in doing some act or performance of some duty in his official capacity.

■■ 2. In the instant case the alleged bribee was one Irving Plaien, a construction examiner of the Federal Housing Administration.[2] In United States v. Birdsall, 233 U.S. 223, 34 S.Ct. 512, 58 L.Ed. 930, the Court held every act of a person acting on behalf of the United States which is within the range of his official duty comes within the statute, i. e., any defendant who has attempted "to influence his [the official's] decision or action on any question, matter, cause, or proceeding which may at any time be pending". The intent of Congress was the actions of federal officers or agents be protected in the broadest possible manner from attempts or offers to bribe. The cases emphasize the necessity for proving criminal intent, which is always a necessary element of the crime of bribery. Browne v. United States, 6 Cir., 290 F. 870; Cohen v. United States, 6 Cir., 294 F. 488. In short, to sustain defendant's conviction in the instant case the jury was required to conclude: (a) defendant in fact offered $100 to Plaien, and (b) defendant's intent at the time of the offer was (i) unlawfully to influence Plaien's decision, and (ii) to induce Plaien unlawfully to

---

1. § 201 provides:

"§ 201. Offer to officer or other person

"Whoever promises, offers, or gives any money or thing of value, or makes or tenders any check, order, contract, undertaking, obligation, gratuity, or security for the payment of money or for the delivery or conveyance of anything of value, to any officer or employee or person acting for or on behalf of the United States, or any department or agency thereof, in any official function, under or by authority of any such department or agency * * * with intent to influence his decision or action on any question,

matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, * * * with intent to influence him to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States, or to induce him to do or omit to do any act in violation of his lawful duty" shall receive a certain sentence to be imposed by the court.

2. The Federal Housing Administration is an agency of the United States. See Korman v. Federal Housing Administrator, 72 App.D.C. 245, 113 F.2d 743.

approve certain construction of a house which failed to meet FHA standards.

3. The facts at trial showed during the Spring and Summer of 1952, defendant was employed as building superintendent on a housing development known as Doverbrook Gardens. The Federal Housing Administration had issued a commitment to insure the mortgages on the houses to be built in this development. Construction had to be in accordance with FHA requirements.

The development consisted of a group of small one-story houses. The first house built was house No. 1, the sample house. The uncontradicted testimony of defendant and of Government witness Grampp was the slab utilized for this house was poured directly on the ground without stone. DX 3 shows this slab was approved, and there is no indication there was any difficulty concerning it. The next houses to be built were houses 2, 3, 87 and 88 (the houses actually involved in the present inquiry). The slabs of these houses were likewise poured without stone beds, and they were likewise approved.

Plaien's official function was to make certain construction meet the minimum standards fixed by the Minimum Property Regulations of the FHA. The Regulations (sometimes referred to as "MPR") are in evidence as DX 1. The only provision dealing with stone under the slabs is MPR § 406–E. The provision provides: "In semi-arid locations or where local experience has shown that water or dampness will not reach the slab under the conditions presented, slab may be placed directly on firm undisturbed soil without water proofing or the porous bed * * *." No evidence was introduced by the Government to show local conditions were such that water or dampness would reach the slabs of these houses under the conditions presented. Plaien testified on cross-examination water or dampness, to reach a concrete slab, must come from one of two sources: surface water or subsurface water.

Charles Brown, a qualified civil engineer, testified he has done civil engineering and surveying work throughout the Dover Area, testified test borings in the property on which these houses were built showed the water table (sub-surface water) was over 7 feet below the finished grade of the houses (i. e., no water was hit when he went down a distance of 7 feet), drainage conditions of the soil were good, and the yards surrounding each house were graded downward on all four sides. This testimony seems clear the facts are: (1) surface water would not reach the slabs because it would be carried away by the downward slope of the yards, and (2) subsurface water would not reach the slabs because it was over 7 feet below the slabs.

### The Offer of Bribe

4. Plaien's testimony was some time in the Spring of 1952, defendant said he wanted to eliminate stone beneath the slabs so as to save $40 a house. He said Plaien "would be taken care of". Plaien's testimony continued:

"Q. Did you have a conversation with him shortly subsequent to this occasion? A. On my next visit to the project, the very next visit, I had occasion to use the phone in his office, and when I had completed my call, Mr. Glazer approached me from the rear of the room with his hand extended. In it he held some folded money, a packet of folded money. I drew back instinctively without touching the money, without being aware of the amount, and I asked, 'What is that for?' He answered, 'It is for you.' I then told him that I thought I had made myself perfectly clear on a previous visit, that in the event I hadn't I would restate my position. And I did. I warned him about offering me more money, and I told him he wasn't worth enough to buy me. Mr. Glazer merely smiled, shrugged his shoulders and said: 'Well, everybody takes money.' "

Nazelrod testified at some time in 1952, he went into a building where Glazer's office was located. The door of the office opened, and Plaien came out saying something to the effect he could be bought but Glazer did not have enough money to buy him. Then defendant Glazer came out with money in his hand and told Nazelrod Plaien would not take the money.

## The Indictment

5. The indictment charges Glazer offered the sum of $100 to Plaien "with intent to unlawfully influence the decision of said Irving R. Plaien in approving or disapproving building construction performed under the said Benjamin Glazer and to induce said Irving R. Plaien unlawfully to approve said building construction which failed to meet the official standards of the Federal Housing Administration * * *".

■ 6. Not every offer of money to a construction examiner is a violation of the statute, and the Government failed to prove the intent necessary to constitute the offense charged. The statute, 18 U.S.C. § 201, makes criminal only a promise or offer of money, etc., with certain specified intent. Consequently, the indictment charges an offer of money with a specified intent; to wit, "intent unlawfully to influence the decision of said Irving R. Plaien * * * and to induce said Irving R. Plaien unlawfully to approve said building construction which failed to meet the standards of the Federal Housing Administration * * *".

7. In charging the jury, I said: "In order for you to find defendant guilty under this indictment, you must find, beyond a reasonable doubt, an offer was made by defendant to Plaien as alleged, and that the purpose or intent of the offer was to influence Plaien's decision and induce an unlawful approval. In other words, even if you find beyond a reasonable doubt defendant offered money to Plaien, you must, in order to find him guilty of the offense charged, also find beyond a reasonable doubt the purpose of the offer was to influence Plaien to make an unlawful decision and to in-duce him to approve construction which did not meet FHA specifications. Thus, if you find an offer was made, but such offer was intended as a gift or gratuity with no intent to influence Plaien's official actions unlawfully, then your verdict must be not guilty."

I also said:

"Under § 406E of the Minimum Property Requirements of FHA, the builder is entitled to place the concrete slab directly on firm soil without a stone bed, if local experience has shown water and dampness will not reach the slab under the conditions presented. In order for you to find defendant sought unlawfully to influence the decision of Plaien and to induce him to approve building construction which failed to meet the official standards of FHA, you must find the government has proved beyond a reasonable doubt that the use of a concrete slab without a stone bed would not meet the standards of § 406E which I have just explained to you.

"In determining whether or not the approval of concrete slabs placed without stone beds would have been unlawful, you may take into consideration the question of whether slabs without a stone bed were permitted by FHA on this or other houses on the same development."

■ 8. The question of defendant's intent to make either a bribe or a gift was a fact determination found by the jury against defendant. Defendant's argument the law of this district and circuit, where the Government's case depends upon circumstantial evidence, is the "burden is upon the Government to exclude beyond a reasonable doubt every reasonable hypothesis other than guilt", has lost its force in the light of the recent announcement of the Supreme Court in Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 137, where Mr. Justice Clark wrote: "The petitioners assail the refusal of the trial judge to instruct that 'where the Government's evidence is circumstantial it must be such as to exclude every reasonable hypothesis other than that of guilt.' There is some support for this type of instruction in the lower court decisions, Garst v. United States,

4 Cir., 180 F. 339, 343; Anderson v. United States, 5 Cir., 30 F.2d 485–487; Stutz v. United States, 5 Cir., 47 F.2d 1029, 1030; Hanson v. United States, 6 Cir., 208 F.2d 914, 916, but the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect, United States v. Austin Bagley Corp., 2 Cir., 31 F.2d 229, 234, certiorari denied 279 U.S. 863, 49 S.Ct. 479, 73 L.Ed. 1002; United States v. Becker, 2 Cir., 62 F.2d 1007, 1010; 1 Wigmore, Evidence (3d ed.), §§ 25–26.

■ "Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances of the evidence is [sic] correctly pointing to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more."

9. But the *intent* is just as much an element of the offense contemplated by the statute and the indictment as the offer itself. This obvious rule was explained in the charge to the jury:

"* * * In order for you to find him guilty of the offense charged, you must find beyond a reasonable doubt that—

"(a) Defendant in fact offered the sum of $100 to Plaien, and

"(b) That his intent at the time of the offer was (i) unlawfully to influence Plaien's decision, and (ii) to induce Plaien unlawfully to approve construction which failed to meet F.H.A. standards."

10. Reasonable doubt if it exists, even under the Holland v. United States rule, supra, is still sufficient to thwart a

finding of guilty, especially when there was no proof of intent to influence Plaien's decision unlawfully and to induce an unlawful approval. From the Government's case, it was not clear just what decision defendant was supposed to have sought to influence. Apparently the Government claims defendant sought to induce Plaien to approve concrete slabs for houses 2, 3, 87 and 88 placed directly on the ground without a stone bed beneath each slab.

§ 406–E of the MPR gives a builder the right to place a slab directly on the ground, "if local experience has shown that water and dampness will not reach the slab under the conditions presented."[3] Placing a slab directly on the ground is improper only if local experience does not show this. The court so ruled in charging the jury:

"* * * In order for you to find that defendant sought unlawfully to influence the decision of Plaien and to induce him to approve building construction which failed to meet the official standards of F.H.A., you must find that the government has proved beyond a reasonable doubt that the use of a concrete slab without a stone bed would not meet the standards of Section 406E * *".

■ An FHA inspector has no authority to fix his own standards of what is or is not proper building procedure. His sole power is to disapprove construction which fails to conform with the MPR of his agency, and his duty is to approve what does conform and an attempt to induce him *to perform his duty* does not violate the statute. There was no evidence the elimination of stone beds under the slabs of houses 2, 3, 87 and 88 would result in water or dampness which would "reach the slab under the conditions presented." The Government's proof was fatally deficient and the motion under Criminal Rule 29(a), 18 U.S.C., should have been granted at the close of the Government's case.

11. Defendant's case on Cr.R. 29(b) is even stronger. Plaien testified on

---

3. See DX 5–C.

cross-examination water or dampness can reach the slab only from (a) surface water or (b) sub-surface water. (1) *Surface water*. Brown testified (without contradiction) the front, rear and side yards were graded downward from all the houses. Since water flows downward, this grading arrangement would naturally take the surface water away from the houses and the slabs. This eliminates the possibility surface water would reach the slabs. (2) *Sub-surface water*. Brown testified (again without contradiction) he made test borings to a depth of 7 feet below the slab bottoms without reaching water. The sole rebuttal to this was Plaien's testimony there may be seasonal variations in the depth of the water table. There was no evidence there are seasonal variations in this locale, or the water table ever came closer than 7 feet to the bottoms of these slabs. There was no Government proof "the use of a concrete slab without a stone bed would not meet the standards of Sec. 406–E". This was a required element of the Government's proof. There was none.

Plaien himself necessarily admitted the omissions of stone beds complied with FHA requirements. Under § 406–E of the MPR, the omission of a stone bed can be approved *only* if water or dampness will not reach the slab under the conditions presented. Plaien approved the slabs of houses 1, 2, 3, 87 and 88 without stone beds. Therefore, water or dampness, it would seem, would not reach the slabs, and the use of concrete slabs without stone beds met the standards of § 406–E. Plaien told Glazer, and testified at trial, he would approve construction only if it conformed with the MPR. He testified when Glazer offered him money, he backed away instinctively without touching the money. Yet, when he approved the slabs without the stone, he did the very thing the Government says Glazer sought to induce him to do.

■ 12. There was no proof the purpose of the offer was to influence Plaien. Plaien testified he went into Glazer's office to use the phone. When he completed the call, "Mr. Glazer approached me from the rear of the room with his hand extended. In it he held some folded money, a packet of folded money * * I asked, 'What is that for?' He answered, 'It is for you.'" As to the incident, Nazelrod testified after Plaien left the room Glazer said that Plaien would not take his money. As to defendant's intent when he made this offer, the only effort by the Government to prove this intent was testimony that, on a previous visit (there was no evidence of the amount of time separating the two visits) Glazer said he wanted to save $40 a house by eliminating the stone under the slabs and that Plaien "would be taken care of". This evidence is not sufficient to warrant a finding by the jury the Government had proved beyond a reasonable doubt the money was offered to influence Plaien's decision to allow defendant's construction work not in accordance with the FHA requirements of § 406–E of MPR. If the fact is Glazer offered money to Plaien, his intent might have been (1) to offer a gratuity or tip, (2) to regain Plaien's friendship which had been weakened or lost by defendant Glazer making complaints on former occasions about Plaien to Plaien's superiors, or (3) to induce Plaien to make inspections more promptly than had been made in the past after inspections were requested by Glazer. Each of these were possibilities, as likely as intent to induce Plaien to approve slabs without stone in violation of the building regulations. Although the indictment charged Glazer offered Plaien $100, Plaien admitted the offer might have been $2. In fact, there is absolutely no evidence at all as to what amount of money defendant offered. Since the Government had the burden of proving its case, the offer may have been $2. It is incredible Glazer would think he could influence Plaien's decision by a bribe of $2. If the offer was $2 it is the more likely his intent was to offer a gratuity or tip. It is difficult to support a proposition the Government proved Glazer's intent beyond a reasonable doubt. In fact, it is just as difficult to find any substantial evidence whatsoever of any illegal intent.

13. There were fatal variances between the indictment and the proof. The present Rules of Criminal Procedure have done much to debilitate the doctrine of variance. However, the doctrine has not ceased to exist, and may still be invoked where it might result in prejudice to a defendant.

14. The indictment charges Glazer offered Plaien $100. Plaien testified he did not know how much was offered to him. On cross-examination defendant admitted it might have been $2. This variance and failure of proof is pertinent in a prosecution under 18 U.S.C. § 201 which provides for a fine of "not more than three times the amount of such money * * *". In view of this provision of the statute, it is incumbent upon the Government to allege and prove the amount of money offered. Absent such proof, it is impossible to ascertain the amount of the permissible fine which any judge could impose under the statute. The judge would have to guess before applying the multiplier.

A judgment of acquittal should be entered.