THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* CÁNDIDA BONILLA GONZÁLEZ ET AL., Defendants and Appellants.

No. 15804. Argued March 1, 1955.—Decided March 31, 1955.

*William Morales Torres* and *Práxedes Álvarez Leandri* for Appellants. *José Trías Monge, Attorney General,* and *Rafael L. Ydrach Yordán, Fiscal of the Supreme Court,* for appellee.

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

Cándida Bonilla González, Rafael Rivera González and Santos Hernández Aponte were charged in the Superior Court with criminal possession of bolita materials, in violation of Act No. 220, Laws of Puerto Rico, 1948. At the close of the government's testimony the parties moved for

a nonsuit. The motion was granted as to Hernández but denied as to Bonilla and Rivera. At the conclusion of the case, the trial court found the latter two guilty and sentenced each of them to six months in jail.

 Both Bonilla and Rivera—in separate briefs, represented by different attorneys—argue that the trial court erred in overruling the motion to declare the search warrant involved herein void and to suppress the evidence thereby obtained. Rivera cannot make this contention on appeal for two reasons. In the first place, it comes too late because he never raised the question either by motion prior to trial or at the trial; indeed, at the trial his counsel affirmatively stated that he had no objection to the introduction of the evidence obtained as a result of the search. Such a contention cannot be made for the first time on appeal. *People* v. *Nieves*, 67 P.R.R. 283. Secondly, the testimony shows both that the residence searched was occupied by Bonilla and that Rivera disclaimed ownership of the seized objects. Under those circumstances Bonilla was the only person with standing to attack the validity of the search warrant. *People* v. *Monzón*, 72 P.R.R. 69; Cornelius on *Search and Seizure*, 2d ed., § 160, p. 367; see *People* v. *Bracetty*, 70 P.R.R. 631.

 We turn to Bonilla's arguments with reference to the search warrant, which was issued on the basis of a sworn statement by Aladino Torres, a policeman, reading in part as follows:

"That I know personally Jane Doe known as Doña Candita, who resides at 219 Mayor Street in Ponce, Puerto Rico, and her residence is described as follows: Wooden house, roof of zinc, with a concrete floor, painted green in the front with yellow background, without a balcony, one story. This house is divided into apartments, in the first three doors there is a dry goods store, in the two following doors the residence of the respondent and in the other two a barbershop the property of Juan Ortiz. It is bounded on the south by a vegetable busi-

ness belonging to Julián Paricci, on the north by the residence of Enrique Bon, on the west by the residence of José Paricci and on the east by Mayor Street, Ponce, Puerto Rico.

"That I know of my own knowledge, that Jane Doe known as Doña Candita, who resides in the above-described house, handles clandestine lottery games, generally known as bolita or boli-pool games, because while the affiant was walking down the said street on August 25, 1955 at about 5:30 p.m., I passed the front of the residence of the respondent and I saw her in it while she was handling bolita or boli-pool tickets of different colors, and she was talking to a mulatto lady who was there and was making notes on a piece of white paper. I could not seize the said boli-pool or bolita material, because I did not have a search warrant at that time, as the said ladies, when they saw me, ran and shut themselves up in the said residence." [1]

The warrant based on the foregoing affidavit reads in part as follows:

"There having been presented on this day proof by means of an affidavit signed by Aladino Torres, Policeman No. 175 *that Jane Doe known as Doña Candita in a house which is located at 219 Mayor Street, Ponce, Puerto Rico,* . . . which is described as follows Wooden house, roof of zinc, with a concrete floor, painted green in the front with yellow background, without a balcony, one story. It has seven doors on the east, two windows on the south, two windows on the north and two doors on the west. *This house is divided into three apartments, in the first three doors there is a dry goods store,*

---

[1] As to the right of a police officer to make an arrest forthwith without either a warrant of arrest or a search warrant under such circumstances, *cf. Griffin* v. *State,* 92 A.2d 743 (Md., 1952), cert. denied, 345 U. S. 907. If we assume that under such circumstances, without a warrant of arrest or a search warrant, an officer may enter the house, arrest the person involved and seize the objects he saw her handling, such immediate action would destroy the contention which is sometimes made in the courts that the officer could not physically and in fact did not recognize the objects he saw in the defendant's hands through the window as bolita materials and that his affidavit was therefore designed solely to justify issuance of a search warrant which was based on mere suspicion and which would authorize a subsequent search at leisure of the premises for hidden articles. *Cf.,* generally, *People* v. *Santos,* 71 P.R.R. 288; *People* v. *Ríos,* 71 P.R.R. 908; *People* v. *Yulfo,* 71 P.R.R. 767; *People* v. *Soto,* 71 P.R.R. 776.

*in the two following doors the residence of the respondent and in the other two doors a barbershop the property of Juan Ortiz.* It is bounded on the south by a vegetable business belonging to Julián Paricci, on the north by the residence of Enrique Bon, on the west by the residence of José Paricci, and on the east by Mayor Street, Ponce Puerto Rico. The house that is occupied by the respondent Jane Doe known as Doña Candita. In said place the said respondent [here her bolita activities are described]; and this Court finding that there is probable cause that Jane Doe known as Doña Candita in the place and in the manner previously stated, is utilizing the material and effects above mentioned, knowingly and intentionally, in violation of Act No. 220 of May 15, 1948 . . .

"It is therefore ordered that during the hours of the day and the night, you shall proceed immediately to the search of the *house of Jane Doe known as Doña Candita, previously described,* in search of the following objects . . ." (Italics ours).

A search warrant is null if it orders a search of a place or places not referred to in the affidavit on which it is based. Also, a warrant, to be valid, must describe the place or places to be searched with sufficient precision so that nothing is left to the discretion of the executing officer as to what place or places he is directed to search. Article II, § 10, Constitution, Commonwealth of Puerto Rico; § 503, Code of Criminal Procedure, 1935 ed.; *People* v. *Burgos,* 73 P.R.R. 194; *Annotation,* 31 A.L.R. 2d 864; *Fleming* v. *State,* 92 A.2d 747 (Md., 1952); cases collected in 79 C.J.S. § 75, pp. 876–7 and 47 Am.Jur. § 35, pp. 522–3; *People* v. *Lienartowicz,* 196 N.W. 326 (Mich.; 1923); Cornelius, *supra,* pp. 495, 508.

The search warrant herein does not violate either of these two tests. We find nothing in it which authorizes a search of any place other than Bonilla's residence, the scene of the activities on which the warrant was based. It is true that the "house" consists of three "apartments", one of which is Bonilla's residence. But when the judge authorized the search of "the house of Jane Doe known as Doña Candita,

previously described . . .", obviously he ordered the search to be confined to that portion of the building described in detail in both the affidavit and the warrant as the specific portion of the house in which Bonilla resided. By the same token, the warrant was sufficiently specific in its direction as to the place to be searched: the residence of Bonilla. Moreover, since her residence is described in both the affidavit and in the search warrant as two doors in the center of a seven-door arrangement, the middle door necessarily leads to her residence. The affidavit and the search warrant were therefore not defective because they failed to indicate the direction from which the doors are counted.[2]

█ Both Rivera and Bonilla contend that the record does not contain sufficient evidence to support their respective convictions.

José Amadeo, a policeman, was the only witness for the People. He testified that when he and two other police officers arrived at the house to execute the search warrant, Rivera and Hernández were in the store belonging to Doña Cándida. The latter was not present at the time. When Rivera and Hernández saw the policemen approaching, they went rapidly through a common door into the residence. The policemen "went in behind them". The witness asked for Cándida. Rafael Rivera replied, "I am the one in charge until she arrives from town." The policemen delivered the search warrant to Rivera since he was the person in charge. When the officers searched the bed in the room, they raised the mattress at the place where the pillow was located and

---

[2] It is not entirely clear from the record whether the officers who made the search went directly into Bonilla's residence or went first into her store and then into her residence. However, even assuming that the policemen got into the residence via the store, they entered the latter legally as it was open to the public. Once they were in the store, they were entitled to enter the residence through the door leading from the store to the residence as they had a valid warrant to search the latter. *People* v. *López,* 77 P.R.R. 500. We might have a different question if the store had been searched. See *People* v. *Barrios,* 72 P.R.R. 163. But only Bonilla's residence, as authorized in the warrant, was searched.

found under the mattress 142 bolita tickets, wrapped in brown paper, from the game called "El Sol". These materials were thereafter admitted in evidence. The policemen searched Rivera and Hernández but found nothing incriminating. When Cándida returned, she denied that the bolita materials were hers, and said that "it would be" of one of the other two defendants.

Rivera testified on his own behalf that at about 1:30 p.m. on the day in question Doña Cándida asked him to remain "there" while she went to town on an errand. The police arrived a half hour later. The latter found the bolita materials under the mattress of Doña Cándida's bed.

Monserrate Guzmán was called as a witness by defendant Rivera. He testified that he saw the policemen enter the store and go through it into the room, where they searched Rivera and Hernández. The police came out of the room with some bolita materials.

Bonilla offered the testimony of Aladino Torres, the policeman who made the affidavit and participated in the execution of the search warrant. The witness stated that when he and the other policemen arrived, Rivera and Hernández were at the entrance door of the house. When they saw the police, Rivera and Hernández went precipitately into the room. The police went into the room, and the witness gave the search warrant to Rivera. The latter ". . . was moving the things on one of the beds. When I gave him the warrant I asked him why he was moving those things and we lifted a pillow next to where he was moving and in that place there were one hundred and forty-two bolita tickets . . . There was a suit and a pillow, he took the suit and lifted it, and put it on top of the pillow and the one hundred forty-two bolita tickets were there. . . . I asked him why he was moving that and he said, because I am in charge of the house now . . . because Doña Cándida was away." After the police had found the bolita materials,

Rivera said that Doña Cándida ". . . gave him that bolita material in order to put it away."

The testimony we have summarized—together with the bolita materials which were seized as the result of the search—was sufficient to sustain the convictions of both Bonilla and Rivera. The conduct of the latter in running to the residence when he saw the policemen; his movements as above described about the bed where the bolita materials were hidden; and his statements that he was in charge for Bonilla and that she ". . . gave him that bolita material in order to put it away", justify his conviction for the crime of possession of bolita materials. Rivera argues that in view of the conviction of Bonilla, the former cannot also be convicted of the crime of possession. But this crime is not mutually exclusive, as Rivera seems to think. On the contrary, under appropriate circumstances as in this case there is no reason why two or more persons may not be convicted jointly of possession of the same bolita materials. *Cf. People v. Berenguer*, 59 P.R.R. 79; *People v. Castro*, 75 P.R.R. 630; *People v. Pieras*, 72 P.R.R. 728; and *People v. Almodóvar*, 71 P.R.R. 19, which we hereinafter discuss as to another point.

As to Bonilla, her conviction for possession must be upheld, in view of the fact that the materials were found in the bedroom of her house under the mattress of her bed while Rivera was in charge for her and in view of the statement of Rivera to the police that Bonilla ". . . gave him that bolita material in order to put it away." [3] See *Smith v. State*, 24 S.E. 2d 702 (Ga., 1943); *Lewis v. State*, 14 S.E.2d 599 (Ga., 1941).

■ In arguing that the evidence does not justify their convictions, Bonilla and Rivera both rely on our statement in *People v. Almodóvar, supra*, 23, reading as follows: "It

---

[3] This particular admission by Rivera implicating Bonilla was introduced in evidence without objection by counsel for Bonilla. *Cf. People v. Castro, supra.*

is a firmly-established rule in criminal cases that in order to convict a defendant exclusively on circumstantial or presumptive evidence it is necessary not only that all the proved circumstances concur in order to show that he committed the offense charged, but that they be inconsistent with any other reasonable conclusion. That is, said evidence must be not only compatible with the defendant's guilt but incompatible with any other rational hypothesis of innocence. The *People* v. *Nevárez*, 10 P.R.R. 91; *People* v. *Quintana*, 44 P.R.R. 37; *People* v. *Sánchez*, 55 P.R.R. 342; *People* v. *Arteaga*, 70 P.R.R. 635."

However, the Supreme Court recently rejected this rule in *Holland* v. *United States*, 348 U.S. 121, 139–40:

". . . The petitioners assail the refusal of the trial judge to instruct that where the Government's evidence is circumstantial it must be such as to exclude every reasonable hypothesis other than that of guilt. There is some support for this type of instruction in the lower court decisions, *Garst* v. *United States*, 180 F. 339, 343; *Anderson* v. *United States*, 30 F. 2d 485–487; *Stutz* v. *United States*, 47 F. 2d 1029, 1030; *Hanson* v. *United States*, 208 F. 2d 914, 916, but the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect, *United States* v. *Austin-Bagley Corp.*, 31 F. 2d 229, 234, cert. denied, 279 U.S. 863; *United States* v. *Becker*, 62 F. 2d 1007, 1010; 1 Wigmore, Evidence (3d ed.), § § 25–26.

"Circumstantial evidence *in this respect* is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more." (Italics ours).

Although this is a question of local law, we think the rule laid down by the *Holland* case is the better rule and

we shall follow it. The *Almodóvar* case and similar cases are therefore expressly overruled. Hereafter in weighing the evidence in a criminal case—and in instructing a jury on the question—trial judges are not to use the test that in order to justify conviction circumstantial evidence must be inconsistent with any other reasonable hypothesis of innocence. On the contrary, as pointed out in the *Holland* case, the problem is if the evidence—whether it be circumstantial or testimonial—establishes the defendant's guilt beyond a reasonable doubt. And, as already indicated, the evidence herein conforms to that standard as to both Bonilla and Rivera.

██ Two other errors assigned by Bonilla do not require extended consideration. She argues that the trial court erred (*a*) in denying her motion for nonsuit and (*b*) in permitting counsel for the other defendants to cross-examine Torres, a witness presented by Bonilla. As to (*a*), Bonilla waived the motion for nonsuit when she presented testimony after the trial court overruled her motion. *People* v. *Díaz*, 69 P.R.R. 577. As to (*b*), this is a frivolous contention. Torres, the witness called by *Bonilla*, having given testimony incriminating the co-defendant Rivera, counsel for the latter was entitled to cross-examine the witness. *State* v. *Crooker*, 122 Atl. 865 (Me., 1923); *People* v. *Braune*, 2 N.E.2d 839 (Ill., 1936).

The judgment of the Superior Court will be affirmed.