UNITED STATES of America,
Plaintiff–Appellee,

v.

John D. RASCO, Defendant–Appellant.

No. 87–2505.

United States Court of Appeals,
Seventh Circuit.

Feb. 11, 1988.

Decided Aug. 2, 1988.

Nolan Lipsky, Petersburg, Ill., for defendant-appellant.

Patrick J. Chesley, Asst. U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Before COFFEY and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

Defendant-appellant John Rasco appeals his conviction for bribing a bank official in violation of 18 U.S.C. § 215, challenging the sufficiency of the evidence and the propriety of certain jury instructions. We affirm.

I.

On December 9, 1986, Keith Johnston, the president of the Bank of Illinois, received a telephone call from the defendant-

appellant Rasco, who identified himself as John Jefferson. Rasco indicated that he had money deposited in a foreign bank that he wanted to invest with others in a joint venture in a commercial facility located in Bloomington, Illinois. Rasco was searching for a banker to help him transfer the off-shore funds. When Rasco asked to meet with Johnston privately without the other investors, Johnston became suspicious and contacted the Federal Bureau of Investigation.

Rasco met with Johnston the next day and again initially identified himself as Jefferson. When the two were alone at lunch, Rasco advised Johnston of his true name and told Johnston that he also used the name John Reed from time to time. Rasco informed Johnston that he was interested in funneling money from overseas into the Bank of Illinois in Normal, Illinois. Rasco said he wanted to transfer into Johnston's bank 2.5 million dollars by the end of 1986 and 25 million dollars by the end of the first quarter in 1987. Rasco also stated that a total of 211 million dollars could be funneled through the Bank of Illinois if it could be done expediently, with the possibility of 300 million dollars more being available for transfer. Rasco explained that he wanted to deal with a smaller bank in order to hide the transactions from the government or anyone else who might inquire about such transactions. Rasco offered and promised to pay Johnston five percent of the money that was laundered. Pursuant to Rasco's inquiry, Johnston told him that he knew of possibly six other banks in the area that might be interested in a similar arrangement.

Later that day Rasco, along with Michael Riley, opened four accounts at the Bank of Illinois in Normal, Illinois. Rasco deposited $50,000 into each account with signed checks in the name John Reed and drawn on the Gulf Union Bank in the Bahamas (totalling $200,000). Johnston informed Rasco that he could not draw against these accounts until the funds for the checks were collected. In a telephone conversation two days later, Rasco told Johnston that he would pay Johnston at most $7,500 in cash and the remainder by check. Rasco said he would leave the payments for Johnston in Johnston's car, in his backyard, or on his porch rather than handing them directly to Johnston.

Rasco met with Johnston again on December 16, 1986. Rasco informed him that he wanted his money invested short term, or in and out of the bank within one year. Rasco said he needed to transfer the money back into the country at any cost and that he had to move 25 million dollars with Johnston or somebody else. Rasco thought that they could deposit $250,000 a week into the bank without raising any suspicion. The two agreed that $25,000 in cash could be withdrawn from the bank each week, and Johnston would receive $10,000 of this amount as his five percent cut.

Rasco and Johnston agreed that another four million dollars would be deposited into the accounts at the Bank of Illinois. Rasco gave Johnston four blank checks which he had signed John Reed and which were drawn on the Gulf Union Bank in the Bahamas. Rasco told Johnston that he could write each check for one million dollars, and Johnston agreed to do so. Johnston, however, did not complete the checks because he knew that John Reed had no signature authority over the Bahamian account.

On December 16, 1986, Rasco wrote a check to Clark Aviation for $2,889, drawn on one of the accounts he had opened at the Bank of Illinois six days earlier. Clark Aviation cashed the check that day, and Johnston called the defendant about covering the check since the original $50,000 checks had not cleared. Rasco assured Johnston that he would wire the money, which he did a few days later by Western Union money orders totalling $2,900.

On January 22, 1987, Rasco was interviewed by Special Agent Al Medina of the Federal Bureau of Investigation. Rasco informed Medina that Michael Riley was involved in illegal drug operations and that Riley had access to drug money overseas. Rasco said that Riley was going to transfer 3 million dollars into the accounts at the

Bank of Illinois, and that Rasco had opened these accounts for that purpose.

Rasco was indicted by a federal grand jury on May 6, 1987, for bribery of a bank official in violation of 18 U.S.C. § 215.[1] This section provides, in pertinent part:

"(a) Whoever—

(1) corruptly gives, offers, or promises anything of value to any person, with intent to influence or reward an officer, director, employee, agent or attorney of a financial institution in connection with any business or transaction of such institution;

\* \* \* \* \* \*

shall be fined not more than $5,000 or three times the value of the thing given, offered, promised, solicited, demanded, accepted, or agreed to be accepted, whichever is greater, or imprisoned not more than five years, or both, but if the value of the thing given, offered, promised, solicited, demanded, accepted, or agreed to be accepted does not exceed $100, shall be fined not more than $1,000 or imprisoned not more than one year, or both."

Specifically, the indictment charged that Rasco:

"... with the intent to influence and reward knowingly and corruptly offered and promised to pay personally to Keith L. Johnston, an officer, employee and agent of the Bank of Illinois in Normal, the deposits of which are insured by the Federal Deposit Insurance Corporation, a thing of value in excess of $100.00, namely five percent of millions of dollars that were to be run through said bank."

After Rasco pleaded not guilty at his arraignment, he was tried by a jury which returned a verdict of guilty. The district court sentenced him to a term of five years imprisonment.

## II.

■ Rasco submits that his guilt was not proven beyond a reasonable doubt because

the government failed to establish an exact value of the bribe which he offered or promised to Johnston. In a related argument, Rasco contends that the district court improperly instructed the jury on the elements of the offense by stating that the government had to prove that the value of the thing offered or promised Johnston was in excess of $100, as opposed to proof of the actual value of the bribe. According to Rasco, the absence of proof of the exact value of the bribe mandates a reversal of his conviction.

In support, Rasco cites *United States v. Glazer*, 129 F.Supp. 285 (D.Del.1955). In *Glazer*, the indictment alleged that the defendant offered a $100 bribe to an agent of the Federal Housing Administration in return for the agent's approval of construction done on buildings which did not meet official standards. The defendant was charged with violating 18 U.S.C. § 201, which, as the district court noted, provided:

" 'Whoever promises, offers, or gives any money or thing of value, or makes or tenders any check, order, contract, undertaking, obligation, gratuity, or security for the payment of money or for the delivery or conveyance of anything of value, to any officer or employee or person acting for or on behalf of the United States, or any department or agency thereof, in any official function, under or by authority of any such intent to influence his decision or action on any questions, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, \* \* \* with intent to influence him to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States, or to induce him to do or omit to do any act in violation of his lawful duty' shall receive a certain sentence to be imposed by the court."

*Id.* at 286 n. 1. After the jury returned a verdict of guilty, the district court granted

---

**1.** Rasco was also indicted for bank fraud in violation of 18 U.S.C. § 1344. The bank fraud

charge was dismissed prior to trial.

the defendant's motion for judgment of acquittal. The court held that the government failed to prove the intent necessary to constitute the offense charged because there was no proof that the purpose of the defendant's offer of money was to influence the agent. The court reasoned that if in fact the defendant offered money to the agent, the defendant's intent might have been (1) to offer a gratuity or tip; (2) to regain the agent's friendship after the defendant had complained about the agent to the agent's superiors; or (3) to induce the agent to conduct the inspection more promptly. The court reasoned that each of these were possibilities, as likely as the intent to induce the agent to approve the buildings in violation of the building regulations, and thus the government failed to prove the intent necessary to convict the defendant of the crime of bribery. *Id.* at 290.

The court in *Glazer* also noted that the agent testified that he did not know how much money the defendant offered to him, and the agent admitted the offer might have been $2. In dictum, the court stated:

"This variance [between the indictment charging an offer of $100] and failure of proof is pertinent in a prosecution under 18 U.S.C. § 201 which provides for a fine of 'not more than three times the amount of such money....' In view of this provision of the statute, it is incumbent upon the Government to allege and prove the amount of money offered. Absent such proof, it is impossible to ascertain the amount of the permissible fine which any judge could impose under the statute. The judge would have to guess before applying the multiplier."

*Id.* at 291. It is on the basis of this dictum that Rasco premises his argument that the government was required to prove the exact amount of money he offered Johnston.

Since *Glazer*, no court has followed its dictum requiring proof of the exact amount of the bribe offer, and we join those who are in disagreement with its dictum for two reasons. First, the dictum in *Glazer* conflicts with this court's Federal Criminal Jury Instructions for bribery, graft, and conflicts of interest in violation of 18 U.S.C.

§ 201. For example, the instruction defining the elements of giving a bribe provides, in pertinent part, that the government must prove "that the defendant directly or indirectly [promised, gave, offered] a thing of value to a public official...." Thus, this court's instructions require only that the government prove that a thing of value was offered, and not as the dictum in *Glazer* sets forth requiring proof of the exact amount of the bribe.

More fundamentally, the dictum in *Glazer* runs contrary to the express language of the statute defining the crime as promising or offering "anything of value" to a public official. The district court in *Glazer* ignored this language and instead incorporated the portion of the statute establishing the amount of any potential fine as limiting the types of bribes which would constitute criminal conduct, namely only those bribes for which a definite value can be proved. The penalty provision does not define the offense, but merely provides for the maximum amount of fine which can be imposed. Under section 215, the maximum fine is $5,000 or three times the value of the bribe, whichever is greater. *A fortiori,* if the value of the bribe cannot be determined or if three times the value of the bribe does not exceed $5,000, then the maximum possible fine would be $5,000. Nevertheless, this penalty provision does not alter or amend the statutory definition of the offense as giving, offering, or promising "anything of value" to a bank official. Thus, we hold the government was not required to establish the exact value of the bribe that Rasco offered or promised to Johnston, and the district court's jury instruction was proper, stating that the government had to prove that the value of the thing offered or promised Johnston was in excess of $100, as contrasted with the alleged requirement of proof of the actual value of the bribe.

Rasco argues that even if the government was not required to prove an exact value of the bribe offer, the government's case against him was defective because the government failed to establish that the bribe offered had any value. Ac-

cording to Rasco, he did not offer or promise any specific amount of bribe, but was only involved in discussions concerning various figures that might be offered and that the only definite amounts offered were contingent.

What Rasco's argument fails to recognize, however, is that he was charged and convicted for offering or promising a thing of value to a bank official, and not actually giving such a bribe. The crime of offering a bribe is completed when a defendant expresses an ability and a desire to pay the bribe. *United States v. Jacobs*, 431 F.2d 754, 760 (2d Cir.1970), *cert. denied*, 402 U.S. 950, 91 S.Ct. 1613, 29 L.Ed.2d 120 (1971). As the *Jacobs* court pointed out, the crime of offering a bribe occurs:

> "even though the official offered a bribe is not corrupted, or the object of the bribe could not be attained, or it could make no difference if after the act were done it turned out that there had been actually no occasion to seek to influence any official conduct. It is also perfectly plain that the crime is consummated irrespective of whether an offer of an amount of money is accepted by the official."

*Id.* at 759–60 (citation omitted).

■ Viewing the evidence in the light most favorable to the government, the defendant offered or promised a bribe to Johnston that had a definite value when he expressed his desire to deposit 2.5 million dollars by the end of 1986 and 25 million dollars by the end of the first quarter in 1987 and he promised to pay Johnston five percent of this amount. At this point, the defendant expressed his ability and desire to pay a bribe to Johnston in the amount of five percent of 25 million dollars, and the crime was completed at that time.

### III.

■ Rasco argues that the district court improperly denied his request for a lesser included offense instruction, stating:

2. In reaching this conclusion, the government relies on this court's analysis in the original panel opinion in *Schmuck*, 776 F.2d 1368 (7th Cir.1985), an opinion which was vacated nine months before the government's brief in this case was filed. *See* 784 F.2d 846 (7th Cir.1986).

> "The crime of offering or promising a thing of value in excess of $100.00 to a bank official with which the defendant is charged in the indictment includes the lesser offense of offering or promising a thing of value to a bank official which does not exceed $100.00.

> If you find the defendant not guilty of the crime of offering or promising a thing of value to a bank official charged in the indictment or if you cannot unanimously agree that the defendant is guilty of that crime then you must proceed to determine whether the defendant is guilty or not guilty of the lesser offense of offering or promising a thing of value to a bank official which does not exceed $100.00."

One requirement for the giving of a lesser included offense instruction is that the elements of the lesser offense form a subset of the elements of the charged offense. *United States v. Schmuck*, 840 F.2d 384 (7th Cir.) (en banc), *cert. granted*, — U.S. —, 108 S.Ct. 1727, 100 L.Ed.2d 192 (1988). In this case, the government concedes that this requirement is satisfied.[2]

The second requirement that must be satisfied in order to be entitled to an instruction on the lesser included offense is that a rational trier of fact could have found the defendant innocent of the greater offense, but guilty of the lesser offense. *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973); *United States v. Medina*, 755 F.2d 1269, 1273 (7th Cir.1985). As this court explained in *Medina:*

> "Although this requirement usually is satisfied by the presentation of sharply conflicting testimony on the element of distinguishing the greater offense from the lesser offense, it also may be satisfied where there is no conflict in the testimony but the conclusion as to the lesser offense fairly may be inferred from the evidence presented, 'including a reconstruction of events gained by ac-

Although the government would be well-advised to be more thorough in its research, the oversight does not affect our disposition of this issue in light of our conclusion *infra* that Rasco failed to meet the second requirement for a lesser included offense instruction.

cepting the testimony of one or more witnesses only in part.' "

*Id.* (quoting *United States v. Sinclair*, 444 F.2d 888, 890 (D.C.Cir.1971)) (citation omitted).

In the case at hand, no evidence in the record supports a finding that the amount of the bribe was $100 or less because the value of every conceivable bribe offered to Johnston by Rasco exceeded $100. Rasco offered Johnston five percent of 2.5 million dollars to be transferred by the end of 1986 and 25 million dollars by the end of the first quarter of 1987. Rasco deposited $200,000 into the bank and stated that he would give Johnston at most $7,500 in cash and the remainder by check. Even considering the only money actually cleared through the Bank of Illinois in Normal—the money orders totalling $2,900—five percent of this amount is $145. Hence there was absolutely no evidence to justify a conclusion that Rasco offered less than $100 to Johnston, and Rasco was not entitled to the lesser included offense instruction.

### IV.

The decision of the district court is AFFIRMED.