In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 03-1169 & 03-1235

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LESZEK SYNOWIEC,

*Defendant-Appellant.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 856—**David Coar**, *Judge.*

ARGUED JUNE 3, 2003—DECIDED JUNE 24, 2003

Before FLAUM, *Chief Judge*, and BAUER and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Without question, Leszek Synowiec bribed an Immigration agent on March 24, 1999. Even Synowiec would not quibble with that fact. But did he bribe the same agent a month earlier, the date the one-count indictment alleged that the crime was committed? District Judge David Coar said "yes" after a court trial, and Synowiec appeals, challenging the sufficiency of the evidence supporting his conviction.

INS agents arrested a Polish woman, Malgorzatka Nieweglowska, at a house in Elmwood Park, Illinois, on February 10, 1999. Nieweglowska was in the country ille-

gally, a fact she readily admitted. Synowiec was at the house with Nieweglowska when she was arrested. After the arrest, Nieweglowska surrendered her passport to the agents and was taken downtown. She was booked and then released pending a hearing.

Several days later, two of the arresting INS agents returned to the house after receiving a call from Nieweglowska. Once there, Synowiec asked one of the agents, Derewonko, if there was "anything that could be done" about Nieweglowska's case. He also asked if the agent could lose Nieweglowska's "paperwork." When asked what he meant, Synowiec rubbed his thumb and index finger together and said, "I'll take care of you anytime, anywhere." Near the end of this conversation, Synowiec directed Nieweglowska to pour a glass of cognac for the party, and he proposed a toast: "This is to a friendship and to future business . . . ."

Following the meeting we just described, Synowiec called Agent Derewonko's pager a few times but got no response. Then, on February 24, Derewonko called Synowiec, and the phone was hot. The following conversation was recorded:

>       SYNOWIEC:      Did you give any thought on the subject:
>
>       DEREWONKO:     Yeah, but listen, I, I started but you know to check everything so that everything would be okay. I have to collect all the paperwork and slowly I'm throwing away paperwork that's not needed, and that's all. The passport I have of Malgorzatka. You know, now I have to get on a computer that gets all the court dates, so I asked this one piece of ass who

|            | works in that area to go skiing with me this weekend. |
|------------|---|
| SYNOWIEC:  | aha, aha. |
| DEREWONKO: | So Lester, how much do you think? What's it going to look like? How do you want to take care of this? For me now, this will be no problem to take care of. |
| SYNOWIEC:  | For me, there's no problem. Listen Les, take care of it. You know the situation, take care of it, you know, bring me the passport, you know, and the paperwork, you know, that what is not needed you throw out or take out of her file, you know. The best thing is, if she didn't have to go to court. You know, if you would be able to take care of this. |

After discussing what should be done, Synowiec turned the discussion to price.

|            |   |
|------------|---|
| SYNOWIEC:  | We're talking like two men. How much? How much? And that's it. We meet and that's it. |
| DEREWONKO: | Okay. |
| SYNOWIEC:  | Whatever time. You know? We meet and everything is fine. |
| DEREWONKO: | Well, okay, but Lester, how much do you think? |
| SYNOWIEC:  | I don't think. You should think, you know? You need to tell me. You know? We're Lester and Lester. [Note: The recorded conversations were in Polish, and the parties stipu- |

lated to the accuracy of the transcripts. So we can only assume that "Leszek" in Polish is fairly translated as "Lester" in English. And in a bit of an irony, Agent Derewonko's first name is Lester.]

DEREWONKO: Well, okay, but then I don't want to give you a price and . . .

SYNOWIEC: Well tell me in round about way, around . . .

DEREWONKO: Well okay.

SYNOWIEC: How much does something like that run?

DEREWONKO: Well okay.

SYNOWIEC: Well, you know. How much? Around?

DEREWONKO: Okay.

SYNOWIEC: Les, you know, when you take care of things and you know everything is fine you let me know.

DEREWONKO: Okay, once I take care of all the paperwork and everything is fine I'll tell you exactly how much.

SYNOWIEC: No problem.

DEREWONKO: Don't worry this isn't the first time I'm doing something like this.

SYNOWIEC: Oh, oh, I like that, I like the sound of that.

Later in the same conversation, after discussing the possibility of doing other "business" together, Agent Derewonko said:

DEREWONKO:  Right now everything is under control. I just want to check a couple things and make sure everyone forgets about the case, and then let's move forward.

SYNOWIEC:  Okay.

Derewonko and Synowiec then agreed that they would meet in the future.

The indictment charged that Synowiec committed the crime of bribery of a public official during the February 24 recorded conversation we just reproduced. Synowiec argues that his statements fell short of being an offer or promise to give something of value sufficient to satisfy the statute he was charged with violating, 18 U.S.C. § 201(b). Because no actual price was discussed or agreed to during the conversation, Synowiec contends that the evidence against him is legally insufficient. This is so, he says in a bit of hyperbole, because he "clearly and steadfastly declined to give the INS agent the offer he requested" during the conversation.

Synowiec's view of what is necessary for an "offer" under the bribery statute is too rigid and formalistic. It is not necessary for a briber to be familiar with *Williston on Contracts* in order to make an illegal offer. Under the statute, it is sufficient if a "defendant expresses an ability and a desire to pay the bribe." *United States v. Rasco*, 853 F.2d 501, 505 (7th Cir. 1988). This can be done in the often clandestine atmosphere of corruption with a simple wink and a nod if the surrounding circumstances make it clear that something of value will pass to a public official if he takes improper, or withholds proper, action. And we think Synowiec's actions and statements, both on February 24 and in the earlier discussion when he rubbed his thumb and index finger together in a universally understood gesture implying money, passes the

test. The requirement that a defendant expresses "an ability and desire to pay a bribe" in order to satisfy the bribery statute is a less demanding requirement than what the civil law requires for an enforceable offer. Under *Rasco*, Synowiec would be guilty of offering a bribe if he told Agent Derewonko "I am willing and able to pay you to make Ms. Nieweglowska's case go away" even though that statement would not meet all the formal requirements for a binding offer under civil law.

The view we express is consistent with the requirement that § 201 "is to be broadly construed in order to effectuate its legislative purpose of deterring corruption." *United States v. Hernandez*, 731 F.2d 1147, 1149 (5th Cir. 1984). Using technical civil law hornbook definitions of "offer" would be at odds with the goal that § 201 be an effective net for snaring those who would subvert the public good.

Synowiec relies heavily on *Hernandez* saying that what he did on February 24 and before amounted to no more than a "preliminary preparatory step that might have led to an offer." In *Hernandez*, the defendant was accused of using a go-between, Brown, to attempt to bribe a police officer to change his testimony in violation of 18 U.S.C. § 201(d). Brown, however, made only two contacts with the officer that related to a bribe: (1) Brown told the officer that some people were asking about the officer; and (2) in response to the officer's inquiry as to why, Brown related that these people "they want to know if you can be bought, if you will change your testimony." 731 F.2d at 1150. The court concluded that this solitary query was merely a preliminary "feel out" that did not rise to the level necessary to show a bribe offer, and reversed the conviction.

Synowiec's discussions with Agent Derewonko are a far cry from what happened in *Hernandez* where only one

statement was even arguably relevant, and that said nothing about the identity of the offerer or that person's willingness or ability to pay anything. Fundamental details were absent, such as which case was involved and what the officer was expected to do. Unlike here, there was no expression of interest by the officer, no subsequent meetings or negotiations, no repetition of the offer, and no actual agreement that the officer would undertake the illegal act.

Courts presented with facts analogous to this case have had no trouble concluding that matters progressed beyond the mere "feeling out" stage. *See United States v. Muhammad*, 120 F.3d 688, 693-94 (7th Cir. 1997) (rejecting contention that defendant who agreed, during a conversation with an undercover agent, to corruptly influence fellow jurors and who went to a meeting spot with intent to take money, but who did not actually approach the agent at the spot, had not completed a "substantial step" towards soliciting a bribe); *Rasco*, 853 F.2d at 504 (rejecting contention that proof was insufficient because defendant did not offer any specific amount of bribe). This is true even when there was an express disagreement between the parties as to what the amount of the bribe would be. *See United States v. Jacobs*, 431 F.2d 754 (2nd Cir. 1970) (finding that IRS agent's rejection of $5,000 bribe offered by defendant "had no bearing" on whether defendant violated the bribery statute because the crime was already complete once defendant "expressed an ability and a desire to pay").

Finally, although the government does not argue the point, the indictment here charged that the crime was committed "on or about" February 24, 1999. Because the exact date was not a critical part of the charge, we think Synowiec's actions on March 24 could fairly be considered part and parcel of the bribery charge. *See United States v. Kimberlin*, 18 F.3d 1156 (4th Cir. 1994) (Fact

that indictment charged that underlying drug violation occurred "[i]n or about July" did not preclude a conviction for carrying firearm during drug trafficking crime based on evidence that defendant carried a gun during a drug transaction in August; date specified in indictment was not substantive element of crime, and defendant was not prejudiced by inclusion of that date.); *United States v. Nersesian*, 824 F.2d 1294 (2nd Cir. 1987) (Where "on or about" language is used, the government is not required to prove the exact date, if a date reasonably near is established). As we have observed:

> Where the indictment alleges that an offense allegedly occurred "on or about" a certain date, the defendant is deemed to be on notice that the charge is not limited to a specific date. He therefore cannot make the requisite showing of prejudice based simply on the fact that the government has failed to prove a specific date. The courts agree that when the indictment uses the "on or about" designation, proof of a date reasonably near to the specified date is sufficient.

*United States v. Leibowitz*, 857 F.2d 373, 379 (7th Cir. 1988) (citations omitted). Indeed, "[u]nless the particular date is an element of the alleged offense, it is generally sufficient to prove that the offense was committed on any day before the indictment and within the statute of limitations." *Id.* at 378.

As we said in opening this opinion, not even Synowiec quibbles with the fact that he bribed Agent Derewonko on March 24. During their meeting that day in the parking lot of a White Castle restaurant in Chicago, Synowiec, on videotape, peeled off four $100 bills from a roll of about $5,000 and gave them to Derewonko to close the deal.

Lastly, in sentencing Synowiec to a year of probation, with 6 months of home detention and a fine of $20,000, Judge Coar declined to award a 2-point reduction for

acceptance of responsibility. Synowiec challenges that decision, but we will not disturb it. It is only in rare situations that a defendant, who goes to trial, gets rewarded with a reduction for acceptance of responsibility. And this is not one of those rare situations. Although Synowiec characterizes his defense as strictly legal, it was not. He disputed facts and fair inferences and never admitted criminal responsibility nor expressed any real remorse for his actions.

For these reasons, the judgment of the district court is AFFIRMED.

A true Copy:

       Teste:

                            _____
                            *Clerk of the United States Court of*
                                 *Appeals for the Seventh Circuit*