**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jose Ramon VALLEZ, Juan Molina and Theodore Quinonez,**
**Defendants-Appellants.**

**Nos. 80–1196 to 80–1198.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 3, 1981.

Decided Aug. 10, 1981.

---

Arthur Mabry, Los Angeles, Cal., for Vallez.

Donald B. Marks, Marks & Brooklier, Beverly Hills, Cal., for Molina.

Joseph F. Walsh, Los Angeles, Cal., for Quinonez.

Nancy Wieben Stock, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before FLETCHER and CANBY, Circuit Judges, and SOLOMON, Senior District Judge.[*]

CANBY, Circuit Judge.

Defendants Molina, Vallez, and Quinonez were charged with first degree murder, conspiracy to murder, and conveying a weapon inside a federal prison. After a jury trial, Molina and Vallez were convicted of second degree murder; all three defendants were convicted of conveying a weapon inside a federal prison. We reverse the convictions of Vallez and Quinonez for conveying a weapon inside a federal prison. The other convictions are affirmed.

## FACTS

Molina, Vallez, and Quinonez were inmates in federal prison at Lompoc, California. Molina borrowed $200 from an inmate named Rosas. When Molina did not repay the loan, Rosas contracted to have him killed. On the night of December 28, 1978, Vallez and Molina went to Rosas' cell to persuade him to drop the contract. During a struggle, Rosas was stabbed six times and killed.

Several inmates witnessed the stabbing. Molina, Vallez, and Quinonez were seen near Rosas' cell before he was killed, but Quinonez left before the fight began. An inmate named Duvernay testified that Vallez stabbed Rosas while Molina held him down. Molina himself testified that at some point during the struggle, a knife fell to the floor, and that he picked it up and stabbed Rosas. An inmate named Burgin testified that during the struggle Vallez wielded a "rock in a sock" and Molina wielded a knife.

An inmate named Giles testified that when the struggle ended, Molina left the cell carrying a bloody knife. Molina testified that he went to the cell block bathroom and threw the knife out the window. As Vallez left the cell, he told the inmates who witnessed the struggle, "You guys ain't seen nothing." His hands and clothes were covered with blood. Then Rosas staggered out of the cell and fell to the floor.

Giles also testified that earlier that day he had seen Quinonez hand a knife to Molina while they stood in the middle of the cell block bathroom. An inmate named Wilburn testified that Rosas had tried to borrow a knife from him that afternoon. Two knives were introduced into evidence at trial. One was a butter knife with a handle of white tape and a blade filed to a point like an ice pick. It had been found on the ground below the bathroom window, and it was covered with blood stains. A second knife, fashioned out of sheet metal, had a wide blade. It had been found on the ground below a window at the opposite end of the cell block. There were no traces of blood on the second knife.

## PEREMPTORY CHALLENGES

Molina and Quinonez argue that the district court erred by denying them 20

---

[*] The Honorable Gus J. Solomon, Senior United States District Judge, for the District of Oregon, sitting by designation.

peremptory challenges, as provided in rule 24(b), Federal Rules of Criminal Procedure, for capital offenses. The district court gave the defendants only 16 peremptory challenges, even though they were charged with first degree murder, punishable by death under 18 U.S.C. § 1111(b). Rule 24(b), however, is designed to insure that the jury is not tainted by opinions about capital punishment. *United States v. Martinez*, 536 F.2d 886, 890 (9th Cir.), *cert. denied*, 429 U.S. 907, 97 S.Ct. 273, 50 L.Ed.2d 189 (1976). Because the government agreed before trial that it would not seek the death penalty, the rule does not apply in this case. *Id.* at 890; *Loux v. United States*, 389 F.2d 911, 915 (9th Cir.), *cert. denied*, 393 U.S. 867, 89 S.Ct. 151, 21 L.Ed.2d 135 (1968).

### GRAND JURY IRREGULARITIES

 Molina argues that the district court erred in refusing to dismiss the indictment because of grand jury irregularities. The only irregularity he points to is the use of one witness to testify in two separate cases heard by the same grand jury. He argues that the grand jury is more likely to believe a witness's testimony when the government vouches for his credibility by using him in two separate cases. The argument has no merit. An indictment cannot be attacked on the ground that the evidence before the grand jury was incompetent or inadequate. *United States v. Samango*, 607 F.2d 877, 880 n.6 (9th Cir. 1979).

### SEIZURE OF MOLINA'S LETTER

 Molina argues that the district court erred in refusing to suppress a letter which was seized during the search of his cell. The letter was discovered during a cell-by-cell search which was prompted by a tip that an escape plan was underway. The letter was found in a partially sealed envelope on top of Molina's locker. Prison personnel opened the envelope, and saw that it described the earlier murder of Rosas.

A prisoner's fourth amendment rights are extremely limited. *Lanza v. New York*, 370 U.S. 139, 143, 82 S.Ct. 1218, 1220, 8 L.Ed.2d 384 (1962). This court has ruled, however, that a prison inmate does have a reasonable expectation of privacy in a sealed letter. *United States v. Savage*, 482 F.2d 1371, 1373 (9th Cir. 1973), *cert. denied*, 415 U.S. 932, 94 S.Ct. 1446, 39 L.Ed.2d 491 (1974). The warrantless seizure of a sealed letter from a prisoner's cell therefore violates the fourth amendment, unless it serves a "justifiable purpose of imprisonment or prison security." *Id.* Molina's letter was discovered during a search conducted according to prison regulations which allowed security searches "to detect contraband, prevent escapes, maintain sanitary standards and to eliminate fire and safety hazards." This rule is reasonably designed to promote prison security, a legitimate government purpose. *United States v. Dawson*, 516 F.2d 796, 806 (9th Cir.), *cert. denied*, 423 U.S. 855, 96 S.Ct. 104, 46 L.Ed.2d 80 (1975). There is no indication that the search went further than necessary to effect its purpose. The officer who found the letter testified that he could feel that the envelope contained only paper, but he suspected that the letter might contain a map or escape plans. The letter was properly admitted into evidence. *See Stroud v. United States*, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919).

### PROOF OF MALICE

 Molina claims that the court erred in instructing the jury that malice could be inferred from use of a deadly weapon. The instruction stated:

> If it is shown that the defendant used a deadly weapon in the commission of a homicide, then you may find, from the use of such weapon, in the absence of mitigating circumstances, the existence of malice which is an essential element of the offense. You are not obliged so to find, however. . . .

Because the instruction did not require the jury to infer malice from use of a deadly weapon, and mentioned the effect of mitigating circumstances, it was proper. *United States v. Hardin*, 443 F.2d 735, 738 (D.C. Cir.1970); *Mitchell v. United States*, 434

F.2d 483, 488 n.8 (D.C.Cir.) *cert. denied*, 400 U.S. 867, 91 S.Ct. 109, 27 L.Ed.2d 106 (1970).

■ Vallez argues that the evidence did not establish that he had the malice necessary for second degree murder. He claims that Molina used the knife, and that he was merely present during the murder. The question is whether a rational jury could have found malice beyond a reasonable doubt from the evidence presented. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Nelson*, 419 F.2d 1237, 1242 (9th Cir. 1969). The record shows that Rosas was stabbed six times during a struggle with Vallez and Molina. One witness saw Vallez stab Rosas while Molina held him down. Another witness saw Vallez wielding a "rock in a sock" while Molina wielded a knife. Based on that evidence, the jury could infer malice from Vallez's use of a deadly weapon during the struggle which resulted in Rosas's death.

### PROOF OF CONVEYANCE

■ All three defendants argue that the district court erred in instructing the jury that conveyance of a weapon could be inferred from mere possession. Over the defendants' objection, the court gave the following instructions:

> In order to convict any defendant of the crime of conveying a weapon, you must find beyond a reasonable doubt that he had actual knowledge, that is, that he knew he was carrying a weapon. The defendant's knowledge that he is conveying a weapon may be proved by circumstantial evidence, for example, an inference may be drawn from the mere possession of such a weapon within an unauthorized area of the prison.

> Evidence of possession of a weapon permits the inference that there had been an earlier conveyance of the weapon from place to place within the prison.

The statute, 18 U.S.C. § 1792, does not make it a crime to possess a weapon within a federal prison. *United States v. Kirkland*, 637 F.2d 654, 656 (9th Cir. 1980). Possession of a weapon, however, may under certain circumstances support an inference of an earlier conveyance of the weapon to the place of discovery. *United States v. Bedwell*, 456 F.2d 448, 449 (10th Cir. 1972); *United States v. Hedges*, 458 F.2d 188, 191 (10th Cir. 1972).

■ We need not decide whether the instructions here were adequate. As to Vallez and Quinonez, there was no evidence from which the jury could have inferred conveyance. The jury instructions were therefore improperly applied to them. The evidence established at most that Vallez stabbed Rosas with a knife. That movement of the knife may prove assault or murder, but not conveyance. *See United States v. Kirkland*, 637 F.2d at 656. The evidence established at most that Quinonez handed a knife to Molina. He was not seen carrying the knife, and the circumstances did not establish that he had carried it to the spot where he handed it to Molina. He could just as easily have taken the knife from Molina, examined it, and handed it back. Under those circumstances, mere possession does not prove conveyance. *See United States v. Bedwell*, 456 F.2d at 450–51. Molina, on the other hand, was clearly seen carrying a knife away from the scene of the murder. He also admitted that he carried a knife to the bathroom and threw it out of the window. In his case, any error in the jury instructions concerning conveyance, if there was an error, was harmless. His conviction must stand.

### CONCLUSION

The convictions of Vallez and Quinonez for conveying a weapon within a federal prison are vacated. The other convictions are affirmed.