**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert J. HICKERSON,
Defendant-Appellant.**

No. 83–2105.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 13, 1984.
Decided April 26, 1984.

F. Donald Heck, Jr., Pollock, Ennis & Heck, Quincy, Ill., for defendant-appellant.

Larry A. Mackey, U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, and ESCHBACH and FLAUM, Circuit Judges.

ESCHBACH, Circuit Judge.

A jury found Robert Hickerson guilty on one count of converting union funds and on one count of conspiring to convert union funds, in violation of 29 U.S.C. § 501(c) and 18 U.S.C. § 371. The district court sentenced Hickerson to three years imprisonment on count one and to five years probation on count two. Hickerson appeals from these convictions and we affirm.

## I.

Viewing the evidence in the light most favorable to the government, see *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), the jury could have found the following facts. In 1979, Hickerson was the business agent of Laborers, International Union of North America, Local No. 919 ("Local 919"), located in Quincy, Illinois. Members of Local 919 worked at heavy construction jobs such as highway and bridge construction. As the business agent, Hickerson was a member of Local 919's Executive Board. Other members of the Board in 1979 included Louis Hindbaugh, Harry Hill, Marion "Buddy" Ballinger, Steven Ballinger, Frank Baumgartner, and John Becks.

Work was scarce for Local 919 members in the summer of 1979 because nonunion contractors were being awarded the majority of contracts. This situation, viewed by the members of Local 919 as a serious problem, was a topic of discussion at a series of Executive Board meetings convened in July and August. At the first of these meetings, Hickerson proposed that the Board give him $5,000 for a Las Vegas vacation. Rather than take a vacation, however, Hickerson informed the Board that he would use most of the money to "deal with" the problem of nonunion con-

tractors. This plan was never put to a vote. At a subsequent meeting, Hickerson put forward a second plan. According to this plan, three union delegates would be sent to a union convention in Springfield, Illinois. Each delegate would be given $700 in expense money. However, off the record, it was decided that each of the delegates would kickback $500 of his expense money to Hickerson to finance his plans to combat the nonunion contractor problem. By secret ballot, the Board approved this plan on August 7.

Buddy and Steve Ballinger were chosen to be two of the three delegates (Hickerson was the third). The Ballingers testified that on August 13 and 14 they each indorsed checks made out for $700, but they received only $200 apiece from Hickerson. The Ballingers and Hickerson did subsequently attend the convention in September. Harry Hill testified that in late September, or early October, Hickerson told him that $300 had been spent on vandalism. At that time, Hickerson also informed Hill that one of the companies targeted was Sparks & Wiewel Construction Company. Louis Hindbaugh testified to a conversation he had with Hickerson shortly after he heard reports concerning damage to nonunion contractors' equipment. Hindbaugh stated that Hickerson asked him "did you see it, or did you hear about it." Hindbaugh assumed that "it" was the report of vandalism. Frank Baumgartner also testified that Hickerson "reported [after the money was appropriated] that he got the job done." Agent Michael Ernst, of the Illinois Department of Law Enforcement, testified that acts of vandalism had occurred at a Sparks & Wiewel construction site on September 6 and at a Speedway Blacktopping Company construction site on September 11. Dale Wiewel, of Sparks & Wiewel, and James Curran, of Speedway, testified that their property had been damaged by vandalism on September 6 and September 11, respectively. As part of its proof, the government also introduced a photograph that highlighted a "Molotov cocktail" with a road paver in the background.

On the basis of this evidence, the jury returned a verdict of guilty on both counts of the indictment. Hickerson appeals.

## II.

Hickerson contends on appeal that it was error for the district court to allow into evidence the testimony and the photograph concerning damage to nonunion contractors' equipment. Before we address the merits, however, we must first determine whether Hickerson has preserved the issue for appeal.

■ During the trial, defense counsel never objected on relevance grounds to the admission of the photograph or to any of the testimony relating to the damage done to nonunion contractors' equipment. Absent plain error, such an objection is necessary to preserve the issue for appeal. *See* Fed.R.Crim.P. 51, 52(b); *United States v. Sentovich*, 677 F.2d 834, 837 (11th Cir. 1982); *United States v. Kopel*, 552 F.2d 1265, 1274 (7th Cir.), *cert. denied*, 434 U.S. 970, 98 S.Ct. 520, 54 L.Ed.2d 459 (1977). Hickerson asserts that he did not object at trial because his objection to this evidence had previously been noted and denied at a hearing on his motion in limine.

■ Hickerson's motion in limine requested the district court to order the government not to present "any evidence at the trial of this cause regarding any facts not directly related to the issue being tried." This motion, by itself, was far too broad to pinpoint the objectionable government evidence. The nature of the defense's objections did become apparent at a hearing on the motion in limine. With respect to the photograph's admissibility, the district court stated, "We will argue about that when it comes up." Since the only objection made when the photograph was admitted concerned its authenticity (i.e., who took it, the lens speed, etc.), Hickerson clearly waived this issue unless admission of the photograph was plain error.

Whether Hickerson preserved an objection to the testimony concerning damage to the nonunion contractors' equipment is more problematic. With respect to this testimony, the following colloquy took place during the hearing:

Mr. Heck [Defense Counsel]: I have a motion in limine that may from my discussions with Mr. Mackey [Asst. U.S. Attorney] has been partially spoken to.

In my discovery here would it appear that the contractors at—there are numerous in my opinion what appear to be just ordinary day-to-day vandalism. I think some of them were as late as the middle of '82, and my motion in limine is directed as those.

The Court: I am not sure I understand, but is there any problem here?

Mr. Mackey: To a limited extent. The Government's evidence at least in part will be that Hickerson indicated what he was going to use the money for was to do damage to non-union contractor equipment. Therefore, the Government intends to offer evidence that on two occasions two such non-union contractors suffered damages. Those occasions are confined to the same time period of the alleged conversations and discussions and agreements.

The Court: What's wrong with that?

Mr. Mackey: In the way of discovery we provided things that are several years extended, but we don't intend to offer those.

The Court: Let's come down to what [Mr. Mackey]—

Mr. Mackey: Boils down to two witnesses.

Mr. Heck: The objection to those is—but other than that I was concerned about bringing things up from many, many different areas and contractors.

The Court: You all together on this thing?

Mr. Heck: I think so.

The Court: All right.

Our reading of defense counsel's objection is that he did not want the government to introduce testimony concerning incidents of vandalism outside the time frame of the alleged conspiracy. When the government stated that it intended to present only evi-

dence concerning vandalism during the scope of the conspiracy, defense counsel no longer objected.[1] Again, Hickerson made no objection to the admission of this testimony at trial, so he has waived this issue on appeal in the absence of plain error.

### III.

An appellate court may take notice of "[p]lain errors or defects affecting substantial rights ... although they were not brought to the attention of the [district] court." Fed.R.Crim.P. 52(b). The doctrine of "plain error," however, is predicated on the existence of error. Because we conclude that the evidence—both the testimony and the photograph[2]—was clearly admissible, there was no error and we must affirm Hickerson's convictions.

■■■ Because of their secretive nature, conspiracies are rarely susceptible to proof by direct evidence. Consequently, circumstantial evidence is often admitted to prove the existence of a conspiracy. *See Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Redwine*, 715 F.2d 315, 320 (7th Cir.1983); *United States v. Shelton*, 669 F.2d 446, 450–51 (7th Cir.), *cert. denied*, 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 454 (1982). A conspiracy may be inferred, for instance, from the fact that one or more objects of the conspiracy have been achieved. Proof of an accomplished conspiratorial purpose, therefore, is relevant to prove that a conspiracy exists even though the proof may also prove an act by the defendant that constitutes the substantive offense underlying the conspiracy, *see, e.g., United States v. Redwine*, 715 F.2d at 320 (conspiracy to intimidate inferred from evidence that defendants threw rocks at house and yelled racial epithets), a second offense

not charged in the indictment, *see, e.g., United States v. Miller*, 508 F.2d 444, 448 (7th Cir.1974) (proof that defendants conspired to rob a bank relevant to prove conspiracy to transport a stolen vehicle across state lines), or even a perfectly legal act (e.g., proof that defendant contributed to YMCA might be relevant in appropriate case to prove conspiracy to convert union funds for that purpose).

■■■ In this case, the government attempted to prove the conspiracy to convert union funds through proof that the substantive offense—conversion of the funds—and another purpose of the conspiracy—destruction of nonunion equipment—were achieved. Proof that two nonunion contractors (including one specifically targeted by Hickerson) had equipment damaged during the relevant time period was therefore relevant, though circumstantial evidence, that a conspiracy existed to convert union funds for that purpose.

Hickerson contends, however, that proof of damage to the nonunion contractors' equipment was still inadmissible because the government failed to prove any connection between him and the incidents of vandalism. To support this proposition, Hickerson points to Agent Ernst's testimony that no one knew who was responsible for the vandalism.

Although we believe proof of vandalism during the time frame of the alleged conspiracy would be admissible to prove the conspiracy even without proof that Hickerson was responsible for the vandalism, we need not go that far in this case. Law enforcement officials may not have known who was responsible for the vandalism, but the testimony of other government witnesses clearly demonstrated Hickerson's involvement. Harry Hill's testimony showed

---

**1.** Even if Hickerson continued to object to the testimony concerning vandalism during the period of the conspiracy, we note that the district court did not rule explicitly on Hickerson's motion in limine. In the absence of such a ruling, and especially given the uncertainty of what happened at the hearing, defense counsel should have objected again during the trial to ensure that the error now alleged was properly preserved. *Cf. Rojas v. Richardson*, 703 F.2d 186,

188–89 (5th Cir.1983) (when district court denies motion in limine, defendant must renew objection at trial in order to preserve issue for appeal).

**2.** Because Hickerson alleges the same error with respect to both the testimony and the documentary evidence, we treat them as one.

that Sparks & Wiewel was a targeted firm and that $300 had been spent on destruction by the end of September, 1979. Louis Hindbaugh testified to an implied admission by Hickerson that he had paid for some vandalism in September. Frank Baumgartner's testimony was that Hickerson reported that he "got the job done." The government's proof did connect Hickerson to the vandalism. *Cf. United States v. O'Brien,* 618 F.2d 1234, 1239 (7th Cir.) (only clear and convincing evidence, not evidence beyond a reasonable doubt, of link between defendant and "other crimes" required before evidence is admissible), *cert. denied sub nom. Sheehy v. United States,* 449 U.S. 858, 101 S.Ct. 157, 66 L.Ed.2d 73 (1980).

■ Finally, Hickerson argues that the evidence, even if relevant, was inadmissible because it was unduly prejudicial. Balancing the probative value of evidence against its possible prejudicial impact is a matter left to the district court's sound discretion, *see United States v. Falco,* 727 F.2d 659 (7th Cir.1984); *United States v. Serlin,* 707 F.2d 953, 959 (7th Cir.1983), and will therefore only rarely rise to the level of plain error. It does not in this case. The error here, if indeed it was error, was neither "obvious and substantial" nor "serious and manifest." *United States v. Jackson,* 542 F.2d 403, 409 (7th Cir.1976); *United States v. Greene,* 497 F.2d 1068, 1077 (7th Cir. 1974), *cert. denied,* 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975). *See also United States v. Wilson,* 690 F.2d 1267 (9th Cir.1982) (plain error may be harmless).

## IV.

For the reasons stated above, the judgments of conviction are affirmed.