UNITED STATES of America,
Plaintiff-Appellee,

v.

Steven A. MEDINA and Ronald Crowder, Defendants-Appellants.

Nos. 84–1213, 84–1214.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 24, 1984.
Decided Jan. 30, 1985.

C. Joseph Russell, Asst. U.S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Jessie A. Cook, Helmann & Cook, Robert L. Wright, Wright, Shagley, Lowery & Crawford, Terre Haute, Ind., for defendants-appellants.

Before BAUER, WOOD and CUDAHY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

In this case, yet another testament to brutal prison violence, we are called upon by Steven Medina and Ronald Crowder, inmates at the United States Penitentiary at Terre Haute, Indiana, to review their convictions of first degree murder and conveying weapons within a penal institution. 18 U.S.C. §§ 1111 and 1792. Medina and Crowder challenge the sufficiency of the evidence supporting the verdicts on the conveyance charges, and the admission of prejudicial testimony. Medina further claims the trial court erred in refusing to give an instruction on the lesser included offense of voluntary manslaughter.

## I.

At approximately 8:25 A.M. on March 21, 1983, Wayne Holbrook, a correctional officer, went to inmate Steven Aries' cell, number 123, because Aries had failed to report for work in the prison kitchen. There he found Aries sitting in a pool of blood. Two physicians, Clark and Harrowe, testified that Aries had died from a loss of blood caused by thirty-seven stab wounds. Harrowe described six wounds to Aries' left hand and forearm as defensive wounds. He was unable to determine whether the wounds had been inflicted by one or more weapons or by one or more persons.

A search of Aries' cell revealed two crudely-made, bloodstained knives, a glove, two pair of bloodstained khaki trousers turned inside out, two khaki shirts, and a bloodstained sweatshirt. All bloodstains were of the same blood type—Aries'. One of Crowder's thumbprints was found on the bottom layer of electrical tape which formed the handle of one of the knives found in Aries' cell. The khaki shirts and trousers were institution garb; identifying numbers had been cut out.

The government perforce presented its case against Medina and Crowder largely through the testimony of other inmates at the penitentiary. One of these witnesses, Pedro Flores, became acquainted with Medina in February, 1983. He testified to conversations he had with Medina prior to Aries' murder. The specifics of these conversations will be detailed in the section of this opinion addressing defendants' claim that the testimony's probative value was outweighed by the danger of unfair prejudice. It suffices to say here that the conversations revealed that Medina was angry with Aries because Aries refused to murder another inmate believed to be an informant.

Inmate Larry Mercer testified that on March 20, 1983, the night before the mur-

der of Aries, Medina asked him if he had a pair of surgical gloves. Mercer did not, but gave him two sandwich bags. Later that evening, when Aries walked by Mercer and Medina, Medina stated that Aries "would get what his hand called for sooner or later." Mercer interpreted this statement as a death threat.

Inmate David McLain testified that on the evening of March 20, 1983, Medina told him that they were "going to move on that dude tomorrow." After Aries' murder, Medina asked McLain to check with another inmate to determine whether anyone had seen him leave a particular cell. McLain further testified that Crowder had told him that inmate Satterfield had seen Crowder leave a particular cell.

Inmate Herman Rodgers testified that in the early morning hours of March 21, 1983, he acted as "look out" for Crowder, who, along with Medina, was going to murder Aries. He testified that he walked down the tier to Aries' cell where he observed "hand motions" made by Crowder and Medina, each of whom grasped "something" in his hand. Crowder later told Rodgers to clean up the bloody footprints outside of Aries' cell. Rodgers also testified that there was a knife in the cell he shared with Crowder; the knife was left in their cell the morning of the murder.

Inmate John Light testified that upon waking on the morning of March 21, 1983, he heard what he believed to be the sounds of a fight. He left his cell, walked to a location where he could see the upper tier of cells, and observed Medina and Crowder exiting cell 123.

Inmate Robert Satterfield testified that on the morning of March 21, 1983, he stepped out of his cell, which was located on the upper tier across the range from cell 123. He observed inmate Rodgers standing in front of cell 123 and saw Crowder and Medina enter the cell. Satterfield en-

tered his cell, replaced his coffee cup, and looked back at cell 123. He then observed Crowder's head "going up and down" and heard "loud noise and two grunts."

Lieutenant Thomas testified that in August, 1983, Medina said to him:

> How did you—Thomas, I want to know something. I want to know how you went from nothing to everything.

Thomas believed this was a reference to the successful investigation and subsequent arrest of Medina and Crowder for the murder of Aries. As Thomas was walking away from Medina's cell, Crowder, who was in an adjoining cell, said:

> That's all right Thomas. I'll beat you on the next one. I'll leave one at your office door and you won't know who did it.

Medina offered an alibi defense. Inmate Sims testified that Medina was in the television room at the time of the murder. Inmate Brown testified that both Medina and Crowder were in the television room at that time. Inmate Belt testified, on behalf of Crowder, that on the morning of March 21, 1983, he saw two inmates enter Aries' cell. Neither, he testified, was Crowder. Crowder testified that he was not involved in Aries' murder. He admitted, however, to keeping "two, three knives" with him at all times, and to having three knives on the day of the murder.

## II.

 Medina contends the trial court erred in refusing to instruct the jury on the elements of the lesser included offense of voluntary manslaughter.[1] He argues that the evidence of his "strong dislike" for Aries and the testimony of inmate Light that he heard emanating from Aries' cell what could have been the sounds of a fight provided a sufficient evidentiary foundation for the lesser included offense instruction. Without hesitation, we disagree.

---

**1.** Manslaughter is the unlawful killing of a human being without malice. 18 U.S.C. § 1112. The existence of malice distinguishes first degree murder from manslaughter. The lesser included offense of voluntary manslaughter re-

quires evidence of a killing in the "heat of passion." The defendant must suffer provocation that would cause an ordinary and reasonable person to act rashly, without deliberation or reflection.

As a general rule, a defendant is entitled to an instruction on a lesser included offense "if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973) (citing *Sansone v. United States,* 380 U.S. 343, 349, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965)); *Berra v. United States,* 351 U.S. 131, 134, 76 S.Ct. 685, 688, 100 L.Ed. 1013 (1956); *Stevenson v. United States,* 162 U.S. 313, 323, 16 S.Ct. 839, 843, 40 L.Ed. 980 (1896). *See also Beck v. Alabama,* 447 U.S. 625, 635, 100 S.Ct. 2382, 2388, 65 L.Ed.2d 392 (1980).[2] Although this requirement usually is satisfied by the presentation of sharply conflicting testimony on the element distinguishing the greater offense from the lesser offense, *Sansone,* 380 U.S. at 349–50, 85 S.Ct. at 1009–10, it also may be satisfied where there is no conflict in the testimony but the conclusion as to the lesser offense fairly may be inferred from the evidence presented, "including a reconstruction of events gained by accepting the testimony of one or more witnesses only in part." *United States v. Sinclair,* 444 F.2d 888, 890 (D.C.Cir.1971).

Medina did not contend that he killed Aries in the heat of passion. The trial therefore was not characterized by the presentation of conflicting testimony on the circumstances surrounding the murder which would allow the jury to infer malice on the one hand or heat of passion on the other. Rather, Medina relied upon an alibi defense. The evidence he presented was completely exculpatory; if it had been believed, Medina would have been acquitted of the charge of first degree murder. Medina created a factual dispute only in that he claimed he did not kill Aries. Even though Medina claimed he was not present at the murder scene, he would have this court now hold that he was entitled to a voluntary manslaughter instruction because "heat of passion" could be inferred from the evidence presented by the government.

Assuming *arguendo* that a defendant need not actually present a particular theory to the jury in order to be entitled to an instruction based upon it, *cf. United States v. Prieskorn,* 658 F.2d 631, 636 (8th Cir. 1981), we find the evidence presented by the government's witnesses to be an insufficient basis for a voluntary manslaughter instruction. There was absolutely no evidence of sudden provocation in this case. We hold that on the basis of the evidence presented, Medina was not entitled to a voluntary manslaughter instruction; a jury could not have rationally found Medina not guilty of first degree murder, but guilty of manslaughter.[3]

---

**2.** Medina implicitly contends that this circuit espouses a less strict standard for determining when a defendant is entitled to a lesser included offense instruction. He cites *United States v. Fountain,* 642 F.2d 1083, 1095 (7th Cir.1981), which relied upon *United States v. Grimes,* 413 F.2d 1376, 1378 (7th Cir.1969), for the proposition that a defendant is entitled to have the jury consider any defense theory that has some basis in the evidence, "however tenuous." Not surprisingly, he stresses the phrase "however tenuous." Although similar language can be found in other decisions of this court, a careful reading of these cases mandates the conclusion that the standard applied in this circuit is consistent with that set forth by the Supreme Court in *Sansone, Keeble,* and *Beck.* For example, in *United States v. Creamer,* 555 F.2d 612, 616 (7th Cir.), *cert. denied,* 434 U.S. 833, 98 S.Ct. 118, 54 L.Ed.2d 93 (1977), we quoted *United States v. Hillsman,* 522 F.2d 454, 459 (7th Cir.1975), in support of the proposition that the theory of the defense must have "some foundation in the evi-

dence, 'even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility.'" We proceeded, however, to qualify this language, stating that "[a] jury instruction is only needed if the evidence raises a jury question." *Creamer,* 555 F.2d at 616 (citing *Grimes,* 413 F.2d at 1378). A jury question is raised only when it is possible for a reasonable person (*i.e.,* a rational juror) to conclude that the evidence supports conviction of the lesser included offense. *Creamer,* 555 F.2d at 616. In sum, in this circuit the evidence supporting the defense must be sufficient to provide a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the lesser included offense. For a recent affirmation of this standard see *Nichols v. Gagnon,* 710 F.2d 1267, 1269 (7th Cir.1983).

**3.** Because Medina does not challenge the sufficiency of the evidence supporting the first degree murder conviction, we need not decide

### III.

Medina and Crowder also challenge the admission of certain testimony under Rules 401 and 403 of the Federal Rules of Evidence, claiming the testimony was irrelevant and, alternatively, that its probative value was substantially outweighed by the danger of unfair prejudice. Specifically, they challenge the admission of certain testimony by correctional officer Thomas and inmate Flores.

■■■ Evidence is relevant if it has "any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed.R.Evid. 401. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Fed.R.Evid. 403. The probative value of evidence "is measured by the extent to which it makes the existence of a fact in issue more or less likely." *United States v. Falco,* 727 F.2d 659, 662 (7th Cir.1984). The prejudicial impact of evidence is measured according to the extent to which the jury might consider the evidence for purposes other than that for which it was intended. *Id.* "Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. McRae,* 593 F.2d 700, 707 (5th Cir.), *cert. denied,* 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979) (emphasis in original). That the evidence is damaging to the defendant's case is not a ground for excluding it under Rule 403. *United States v. DeLillo,* 620 F.2d 939, 947 n. 2 (2nd Cir.), *cert. denied,* 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980). It is only when the probative value of the evidence is substantially outweighed by the likelihood that the evidence will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented on the

whether a rational juror could have found him guilty beyond a reasonable doubt of that of-

crime charged, that Rule 403 requires its exclusion. *Falco,* 727 F.2d at 662; *United States v. Benton,* 637 F.2d 1052, 1057 (5th Cir.1981).

■■■ The balancing of unfair prejudice and probative value is within the trial court's discretion; its decision on admissibility is to be accorded "great deference." *United States v. Serlin,* 707 F.2d 953, 959 (7th Cir.1983); *see also United States v. Covelli,* 738 F.2d 847, 854 (7th Cir.1984); *United States v. Solomon,* 688 F.2d 1171, 1178 (7th Cir.1982). With these standards in mind, we turn to an examination of the challenged testimony.

■■■ When Thomas began to testify to a statement made to him by Crowder when Crowder and Medina, as suspects in the murder of Aries, were housed in adjoining cells in the detention center, counsel objected. The government's offer of proof was as follows:

> We expect the witness to testify that Defendant Crowder said at that time something to the effect that "that's all right, I'll beat you on the next one. I'm going to leave one at your office door and you won't know who did it. Yes, I'm going to cut his head off and leave him there and you won't know who did it."

Crowder objected on the grounds that the statement was irrelevant and highly prejudicial. Medina objected on the ground of prejudice. The trial court permitted Thomas to testify to Crowder's statement, but excluded as inflammatory the reference to the manner in which the "next one" would die.

We reject Crowder's contention that his statement was irrelevant to the murder with which he was charged. Crowder made the statement while he was detained in segregation as a suspect in Aries' murder to an officer who was investigating that murder. Crowder's declaration that he would beat Thomas on the "next one" clearly is susceptible to interpretation as an

fense.

implied admission of guilt or as consciousness of guilt of the murder of Aries. We further hold that the probative value of the sanitized version of Crowder's statement outweighed its prejudicial impact. Although admission of the statement may have damaged Crowder's alibi defense, this damage is not the type from which Rule 403 protects him. We find no abuse of discretion in the admission of this statement.

■ Medina contends that because Thomas had testified that he was in the cell adjoining Crowder's, the jury could have assumed that he acquiesced in Crowder's statement. Medina's physical proximity to Crowder when Crowder made the statement is insufficient to support his claim that his case was unfairly prejudiced by its admission. There was simply no indication that Crowder was speaking for Medina as well as for himself. Nor did Thomas testify that Medina in any way ratified Crowder's statement. Under the circumstances, we cannot say that Medina suffered unfair prejudice.

Medina and Crowder also challenge the admission of three portions of testimonial evidence offered by the government through inmate Flores. The first two portions of Flores' testimony to which Medina and Crowder objected related a conversation between Flores and Medina which occurred in February, 1983. Medina, who told Flores he was upset with Aries, stated that he "ought to cut [Aries'] head off."

Medina further said to Flores:
[I] told Steven Aries that if he was convinced that black inmate was an informer, to kill him. And Steven Aries said, "I don't want to kill him because I don't want to start any problems between the blacks and the Mexicans."

Flores' testimony continued:
So Mr. Medina said, "Well, let me go talk to another inmate." And Medina came back and told Mr. Aries, "Everything is all right. Hit him, kill him."

Medina then expressed anger with Aries because Medina "pave[d] the way" for Aries to "hit" the black inmate and Aries declined to do so. Medina stated that he was "tired of seeing [Aries'] face."

■ The trial court ruled the testimony admissible, but precluded reference to Crowder as the "other inmate" with whom Medina spoke concerning clearance of the murder of the black inmate. Because the trial judge ordered deleted from Flores' testimony any reference to him, Crowder's claim of unfair prejudice is without merit.[4] That the jury may have inferred that it was Crowder with whom Medina spoke is insufficient.

■ Medina contends that his statements to Flores concerning Aries' refusal to murder a black inmate are irrelevant to the charged offenses. We think not. Medina's statements are relevant to his motive for killing Aries; they were directed at Aries and demonstrated Medina's hostility toward him. Medina's threat to cut off Aries' head is relevant to whether he in fact participated in the murder of Aries and to his intent toward Aries. Medina alternatively contends that the admission of these statements unfairly prejudiced his case. True, Medina's threat was gruesome. But we cannot say it was likely to stimulate excessive emotion in the jurors and thus prevent a rational determination of the truth. On balance, its probative value substantially outweighed any potential prejudicial impact. With respect to Medina's statements concerning Aries' refusal to murder the black inmate, Medina's claim of unfair prejudice was based on his contention that the statements implicated him in a conspiracy to commit a murder other than the one with which he was charged. The government made clear that the evidence was not offered to prove an uncharged crime but to establish Medina's motive for killing Aries. Medina now contends that the testimony was offered, in violation of Fed.R.Evid. 404, solely to show his propensity to commit the murder with which he

---

**4.** Indeed, when the trial judge ruled that all references to Crowder were to be deleted, counsel for Crowder stated he had no further objection to the admission of this testimony.

was charged. Because Medina did not object to the admission of his statements on Rule 404(b) grounds, he has waived this issue on appeal in the absence of plain error. Fed.R.Crim.P. 52(b). "The doctrine of 'plain error,' however, is predicated on the existence of error," *United States v. Hickerson*, 732 F.2d 611, 614 (7th Cir.1984), and we find none. Medina's statements were admitted for the permissible purpose of showing his motive to murder Aries. The probative value of the statements was high and outweighed the danger of undue prejudice. We find no abuse of discretion in their admission.

 The final portion of Flores' testimony that is claimed to have been erroneously admitted was Medina's statement to Flores, made several days after Aries' murder, that his "heart went out to another inmate." Flores explained that the phrase is an expression of gratitude for a favor rendered. The government argued that this statement tended to show that Medina was involved in the murder with another person. In response to Crowder's objection, the trial court sanitized the original version of Medina's statement which was "my heart goes out to Ojos." Ojos was Medina's nickname for Crowder. Crowder contends that the sanitized version of the statement was prejudicial because the jury might have inferred that Medina was referring to Crowder and that there was some special relationship between them. Although we believe that the sanitized version of Medina's statement, which contained no direct reference to Crowder or to Aries' death, was only marginally probative on the issue whether Medina participated in the murder with another person, we cannot conclude that Crowder was unfairly prejudiced by its admission.[5]

In conclusion, we hold that the trial court did not abuse its broad discretion in admitting any of the challenged testimony.

---

**5.** Medina did not object to the admission of this testimony and we find no plain error in this

## IV.

Finally, Crowder and Medina argue that the evidence produced by the government was insufficient to sustain the jury's verdicts on the charges of conveying weapons within the institution in violation of 18 U.S.C. § 1792. A jury's verdict must be upheld if, "[v]iewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). Under 18 U.S.C. § 1792, the government must prove that the defendant (1) knowingly (2) conveyed a weapon from place to place (3) within a federal prison.

 It is well-established, in this and other circuits, that proof of mere possession of a weapon will not support a conviction of conveying that weapon. Some transportation must occur. *United States v. Greschner*, 647 F.2d 740, 744 (7th Cir. 1981); *United States v. Fountain*, 642 F.2d 1083, 1093 (7th Cir.1981); *United States v. Vallez*, 653 F.2d 403, 407 (9th Cir.1981); *United States v. Kirkland*, 637 F.2d 654, 656 (9th Cir.1980); *United States v. Jasper*, 523 F.2d 395, 397 (10th Cir.1975); *United States v. Bedwell*, 456 F.2d 448, 450 (10th Cir.1972). This court has held that the government must present "independent evidence of the 'conveying' beyond the actual possession and use." *Greschner*, 647 F.2d at 745. In *Greschner*, government witnesses testified only that they had observed the defendant attacking the victim with a "homemade" knife. Defense witnesses testified that the victim attacked the defendant with a knife and that another inmate then handed the defendant a knife which he wielded in self-defense and later surrendered to prison guards. This court reversed the conveying conviction. The evidence failed to show that the defendant transported the weapon to the location of the assault. Indeed, the

regard.

evidence established that the weapon was given to the defendant at the scene. Under these circumstances, the government had not satisfied the independent evidence of conveyance requirement. To uphold the conviction, we determined, would be to "allow a 'conveying' charge to be tacked on to every assault charge." *Id.* at 745.

We made clear in *Greschner* that conveyance will not be presumed from mere possession. There is no rational evidentiary relationship between mere possession and conveyance that will allow the latter to be established solely by proof of the former. Conspicuously absent in *Greschner* were circumstances from which conveyance could be inferred. This was also the case in *United States v. Vallez*, 653 F.2d 403 (9th Cir.1981), in which the court vacated two defendants' convictions of conveying a weapon. With respect to defendant Vallez, the evidence established only that he stabbed the victim with a knife. As to defendant Quinonez, the evidence showed only that earlier that day he handed a knife to the third defendant, Molina. Quinonez was not seen carrying the knife and the circumstances did not establish that he carried it to the location where he handed it to Molina:

> He could just as easily have taken the knife from Molina, examined it, and handed it back. Under those circumstances, mere possession does not prove conveyance.

*Id.* at 407.

In *United States v. Bedwell*, 456 F.2d 448 (10th Cir.1972), as in *Vallez* the jury could only speculate that the defendant himself conveyed the weapon to the location where he was discovered with it. Bedwell was found running the edge of a knife blade across a belt sander in the prison shoe factory where he claimed to have found it. The testimony established that the metal portion of the knife normally would not be found in the shoe factory, although the wood and rivets used to form the handle could be found in that area. The court rejected the government's contention that conveyance by the defendant could be inferred from the evidence that the metal portion of the knife probably would not have been found in the shoe factory.

Cases in which the circumstances of possession supported an inference of conveyance stand in stark contrast to *Greschner*, *Bedwell*, and *Vallez*. For example, in *United States v. Hedges*, 458 F.2d 188 (10th Cir.1972), the defendant, a penitentiary inmate, was discovered hidden in a truck which was stopped for a customary search as it was leaving the institution. A subsequent search of defendant's person revealed a knife. The court rejected defendant's claim that the government had failed to prove conveyance, holding that it was "reasonable to infer that the knife in question was conveyed from the place where Hedges entered the trailer to the sally port where he was discovered." *Id.* at 191. In *United States v. Barnes*, 569 F.2d 862 (5th Cir.1978), the resourceful defendant was discovered grinding to a sharp point the tip of a recently stolen automobile antenna. He admitted that he had obtained the antenna outside the auto body shop and had hidden it in his bunk until the day he was found grinding it in the auto body shop. The court held that the circumstances "permitted an inference of conveyance." *Id.* at 863.

A final illustration of circumstantial proof of conveyance is *United States v. Castillo*, 615 F.2d 878 (9th Cir.1980). Several inmates, including Castillo, were informed that other inmates, who had gathered in the prison yard, "wanted to fight." According to Castillo, he handed a knife that he received from another inmate to inmate Miller. Castillo's men left the cell where they had gathered; they then were confronted by the other group in a hallway, where, according to Castillo, Miller handed him the knife with which he stabbed another inmate. The court rejected Castillo's challenge to the sufficiency of the evidence supporting the conveying conviction. Castillo essentially admitted that the knife had been conveyed from the cell to the hallway, but claimed Miller, not he, conveyed it. If

the jury found his version of the events incredible, the circumstances of possession raised a strong inference that he conveyed the knife:

> The knife was presented to Castillo earlier in the cubicle. He had been given reason to fear for his life and to arm himself prior to entering the hallway where the fight occurred.

*Id.* at 886.

In *Hedges*, *Barnes*, and *Castillo*, there was evidence independent of the proof of mere possession and use at the scene of discovery from which conveyance by the defendant reasonably could have been inferred. In *Castillo*, unlike *Bedwell*, *Greschner*, and *Vallez*, there was evidence that the weapon was in the possession of the defendant at one location and later in his possession at another location within the prison. This evidence, combined with evidence of a reason to convey it from the first to the second location, was deemed sufficient to permit an inference of conveyance.

■ We turn to the question whether the government presented sufficient evidence from which the jury reasonably could have inferred that either Crowder, Medina or both conveyed the knives to Aries' cell. Neither Medina nor Crowder was apprehended with the murder weapons in his possession. The evidence of possession and use at the scene of Aries' murder consisted of Rodgers' testimony that when he observed Medina and Crowder in Aries' cell, each grasped "something" in his hand and each was making motions which led Rodgers to conclude that they were stabbing Aries. Additional testimonial evidence established that Crowder kept two or three knives with him at all times and that he had three knives on the day Aries was murdered. Rodgers testified that a knife kept in the cell he shared with Crowder remained there during the murder. Finally, one of the knives found in Aries' cell bore Crowder's thumbprint.

We turn first to an examination of the evidence against Crowder. The jury was entitled to conclude from the fact that Crowder's thumbprint was found *under* the top layer of tape which formed the handle of one of the knives found in Aries' cell that Crowder possessed that knife at some time prior to the murder. From the evidence that Crowder had three knives on the day he and Medina murdered Aries and the evidence that one knife remained in the cell he shared with Rodgers, the jury reasonably could have inferred that the two knives, the whereabouts of which Crowder declined to testify to, were the knives later found in Aries' cell. The evidence thus supported an inference of earlier possession of the knives by Crowder. Rodgers' testimony established later possession of the knives at the scene of the murder. This evidence, combined with the evidence that Crowder planned to murder Aries and therefore had reason to arm himself before entering Aries' cell, constituted sufficient circumstantial evidence that he conveyed the knives to Aries' cell. A rational juror could have found the element of conveyance beyond a reasonable doubt.

■ With respect to Medina, an entirely different case is presented. There was no evidence introduced at trial that Medina habitually carried a knife or that he possessed a knife prior to the day of the murder. The only evidence linking Medina and a knife was the testimony of Rodgers. It established only that Medina possessed a knife in Aries' cell. We hold there was insufficient independent evidence from which the jury could have inferred that he conveyed one or more knives to Aries' cell.

The government, however, apparently would have us uphold Medina's conveying conviction on the theory that he aided and abetted the conveyance of the knives by Crowder.[6] This court has held that a defendant who has been indicted as a principal may be convicted on evidence establishing that he merely aided and abetted the commission of the substantive offense.

---

**6.** Specifically, the government argues that even if the jury concluded that one defendant carried both knives into Aries' cell the proper result under 18 U.S.C. § 2(a), which makes aiders and abettors punishable as principals, necessarily would be verdicts of guilty as to both defendants.

*United States v. Galiffa,* 734 F.2d 306, 312 (7th Cir.1984); *United States v. Tucker,* 552 F.2d 202, 204 (7th Cir.1977). Where the evidence warrants an aiding and abetting instruction, one may be given even though the defendant was not indicted as an aider and abettor under 18 U.S.C. § 2(a). *United States v. Holleman,* 575 F.2d 139, 144 (7th Cir.1978).

That Medina was indicted as a principal therefore does not undermine the government's argument. The fatal flaw in the government's position is that an aiding and abetting instruction was not given in this case. Medina was convicted on the conveying charge as a principal. We are unwilling to uphold Medina's conviction on a theory that was not argued to the jury and on which it was not instructed. *United States v. Wilson,* 657 F.2d 755, 763 (5th Cir.1981). Medina's conveying conviction must be vacated.

In conclusion, we uphold Crowder's convictions of first degree murder and conveying weapons within the institution and Medina's conviction of first degree murder, but vacate Medina's conviction of conveying weapons within the institution.

AFFIRMED IN PART, REVERSED IN PART.