UNITED STATES of America, Appellee,

v.

Charles William LYNCH, Appellant.

UNITED STATES of America, Appellee,

v.

Michael Robert BAUER, Appellant.

Nos. 85–5268, 85–5275.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 11, 1986.

Decided Sept. 10, 1986.

F. Clayton Tyler, Minneapolis, Minn., for Bauer.

Carol Grant, Minneapolis, Minn., for Lynch.

Jon M. Hopeman, Asst. U.S. Atty., Minneapolis, Minn., for U.S.

Before LAY, Chief Judge, and ROSS and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

Charles Lynch and Michael Bauer at a joint jury trial were convicted of first-degree murder, see 18 U.S.C. § 1111 (Supp. II 1984), conspiracy to murder, see 18 U.S.C. § 1117 (1982), and possession of a weapon while inmates at a federal correctional facility. See 18 U.S.C. § 1791(a)(2) (Supp. II 1984). On appeal both argue that the district court[1] erred in denying their motions for severance and in refusing to instruct the jury on the lesser-included offense of manslaughter. Bauer in addition argues that certain incriminating statements used against him were obtained in violation of his constitutional rights, while Lynch raises a variety of challenges regarding limitations on cross-examination and on the admissibility of impeachment evidence. Finally, both defendants question the sufficiency of the evidence against them. We affirm.

Lynch, Bauer, and the victim, William Finley, at the times relevant to this proceeding were all inmates at the Sandstone, Minnesota, Federal Correctional Institution. The government introduced evidence that Lynch and Finley had been involved in marijuana trafficking at the prison and that a dispute had developed between them

---

1. The Honorable Donald D. Alsop, Chief Judge, United States District Court for the District of Minnesota.

when Finley failed to deliver marijuana for which Lynch allegedly had paid. Several inmates testified that at times during November and December 1984 Lynch had made threats against Finley, and in one of these threats Lynch allegedly had asserted that he knew a karate expert whom he would send after Finley. The government introduced testimony that Bauer, in addition to having had a close relationship with Lynch, appeared to have had some training in martial arts.

On December 20, 1984, according to witnesses, Lynch and Finley again argued and Lynch again threatened Finley. Bauer allegedly was present during this encounter, and an inmate testified that immediately after Finley left he had observed Bauer and Lynch talking together quietly and laughing. Lynch then warned this inmate to leave the area because there would be trouble there soon.

A short while later Finley was stabbed in the stomach in the corridor outside the prison gym. An inmate testified that while looking out his cell window he had observed Bauer making punching motions toward the midsection of a black inmate (Finley was black) while the inmate was held from behind by a large man in a dirty white kitchen jacket—a description that could have fit Lynch. Another inmate testified that he had seen Finley walking in the direction of Lynch and Bauer. When the inmate turned around a few minutes later he saw Finley lying wounded on the gym floor. Two other inmates testified respectively to having seen Bauer running from the scene and washing blood off his hands. Finally, an inmate testified that Bauer had admitted to stabbing Finley for $5,000.

The murder weapon was a knife which was discovered missing from the prison's kosher kitchen on a day when, according to prison records, Lynch had been working there. An inmate testified that on that same day he had seen Lynch with a knife wrapped in newspaper.

## I.

As an initial matter, Lynch and Bauer argue that they should have been tried separately. Each argues that there was greater evidence of the other's guilt and that the jury could not reasonably have been expected to properly compartmentalize the evidence. In addition, Bauer argues that the mutual antagonism between his and Lynch's defenses required severance.

In reviewing these claims we first note that "[g]enerally, persons charged in a conspiracy or jointly indicted on similar evidence from the same or related events should be jointly tried." *United States v. Robinson*, 774 F.2d 261, 265 (8th Cir.1985). A district court's refusal to sever is not a ground for reversal absent a showing of "great prejudice and an abuse of discretion." *Id.* at 266. This means that a defendant must show more than merely that he would have had a better chance of acquittal at a separate trial. *United States v. Krevsky*, 741 F.2d 1090, 1094 (8th Cir. 1984).

Here, the charges and evidence were relatively simple and straightforward and were not "so extensive, complicated, or confusing that the jury would be unable to consider the guilt of the two defendants independently." *See United States v. Nabors*, 762 F.2d 642, 652 (8th Cir.1985); *United States v. Miller*, 725 F.2d 462, 468 (8th Cir.1984). A defendant is not entitled to severance merely because the evidence against a codefendant is arguably more damaging than the evidence against him, *Robinson*, 774 F.2d at 267; nor is severance required every time a defendant did not participate in every act constituting the joined offenses. *United States v. Kaminski*, 692 F.2d 505, 520 (8th Cir.1982); *cf. United States v. Roth*, 736 F.2d 1222, 1228–29 (8th Cir.) (lack of evidence that defendant made any of the extortionate phone calls did not warrant severance when defendant was charged with a common conspiracy and there was evidence that he was involved in picking up the extorted money), *cert. denied*, 469 U.S. 1058, 105 S.Ct. 541, 83 L.Ed.2d 433 (1984). Inconsistent defenses require severance only when the differences between the codefendants' positions are so irreconcilable

that the jury might "infer from the conflict alone that both [defendants] were guilty." *United States v. DeLuna,* 763 F.2d 897, 921 (8th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985). It is not sufficient that one defendant be taking the position that he knew nothing of the crime while asserting that his codefendant was involved. *Id.*[2]

Even taking these arguments for severance cumulatively, we cannot find the abuse of discretion and great prejudice necessary to reverse the district court. *See Robinson,* 774 F.2d at 268. We reject both Lynch's and Bauer's arguments on this issue.

## II.

Lynch and Bauer next argue that they were entitled to have had the jury instructed on the lesser-included offense of manslaughter (a second-degree murder instruction was given) because evidence introduced at trial raised a question whether the stabbing might have resulted not from malice but from sudden anger as Lynch and Finley continued quarreling over their marijuana transaction.

A defendant is entitled to a lesser-included offense instruction only if "the evidence adduced at the trial provides a rational basis upon which the jury could find [the defendant] not guilty of the greater but guilty of the lesser offense." *United States v. Elk,* 658 F.2d 644, 648 (8th Cir.1981). This case is factually similar to *United States v. Medina,* 755 F.2d 1269, 1273 (7th Cir.1985), in which the defendants' requests for voluntary manslaughter instructions also were rejected. *Medina* involved the stabbing of a prison inmate, with some witnesses placing the defendants at the murder scene and other witnesses placing the defendants in the television room. The heat of passion evidence consisted of suggestions that one defendant bore a "strong dislike" for the victim plus the testimony of one inmate that the noises he heard emanating from the murder scene could have been the sounds of a fight. The court concluded that the proof thus relied upon constituted "absolutely no evidence of sudden provocation." *Id.* Similarly, the evidence of heat of passion here consists only of a string of prior arguments and a continuing dispute between Lynch and Finley regarding marijuana and an inference that, since no one saw the start of the fatal encounter between Lynch, Bauer, and Finley, the argument might have been rekindled. Neither Lynch nor Bauer contends that the evidence showed any "sudden provocation" during the encounter in the passage outside the gym. Accordingly, the district court did not err in refusing to give a manslaughter instruction.[3]

## III.

Bauer claims that the district court erred in admitting into evidence a series of incriminating notes he passed to an inmate named Robinson and several incriminating statements he made to an inmate named Williams because Robinson and Williams deliberately solicited the communications at

---

**2.** The case on which Bauer relies, *United States v. Bostic,* 713 F.2d 401 (8th Cir.1983), is distinguishable. In *Bostic* one of the accused parties was raising a defense of coercion, thus admitting participation and claiming that his codefendants forced him to aid in their crime. To accept that defense, the jury would have had to find the codefendants guilty. Here Bauer's basic defense was that he did not stab Finley; and even had he testified (as he initially announced he would) that Lynch had committed the stabbing, the jury could have accepted Bauer's alibi defense and challenges to the credibility of the prosecution witnesses without necessarily reaching the conclusion that Lynch thus killed Finley.

**3.** Lynch and Bauer both assert that the alleged statement of Bauer that he hadn't meant for Finley to die negated the existence of malice. We observe, however, that malice does not require proof of a subjective intent to kill but may be established by evidence of conduct which is sufficiently wanton and reckless to support an inference that the defendant was aware of a serious risk of death or grave bodily harm. *United States v. Black Elk,* 579 F.2d 49, 51 (8th Cir.1978) (per curiam). Bauer is not reported as having said that he did not mean to stab Finley, only that he did not mean for Finley to actually die. This piece of evidence alone thus is of little value in determining whether Bauer's conduct was wanton and reckless or whether it was provoked by circumstances which would have caused a reasonable person to act rashly.

the urging of the government, thus subjecting Bauer to the equivalent of interrogation in the absence of counsel in violation of his rights under the fifth and sixth amendments. *See United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980).

■ The events of which Bauer complains occurred while he was housed in the segregation unit at Sandstone subsequent to the stabbing but prior to his indictment on the murder charge; thus, as the Supreme Court recently made clear, his sixth amendment right to counsel had not yet attached. *Moran v. Burbine*, —— U.S. ——, 106 S.Ct. 1135, 1145–47, 89 L.Ed.2d 410 (1986). Bauer attempts to avoid this result by arguing that the government deliberately delayed his indictment to prevent him from seeking the advice of counsel. The sequence of events, however, suggests that the government was waiting until it felt it had sufficient evidence to support the charge. For example, a number of inmates initially denied knowledge relevant to the stabbing because, as they later testified, they were afraid to become involved; and the eyewitness refused to testify before speaking to his attorney and thus did not appear before the grand jury until its March session. Bauer was indicted on March 7. *See Flittie v. Solem*, 775 F.2d 933, 943 (8th Cir.1985) (en banc), *cert. denied*, —— U.S. ——, 106 S.Ct. 1223, 89 L.Ed.2d 333 (1986).

Bauer further argues that the *Henry* prohibition on the use of undercover police informants should be applied through the fifth amendment to protect suspects in custody who otherwise would be entitled to *Miranda* warnings (*see Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) concerning their rights to counsel. We have twice assumed without deciding that *Henry* so extends. *See Flittie*, 775 F.2d at 943 & n. 17; *United States v. Surridge*, 687 F.2d 250, 253 (8th Cir.), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 465, 74 L.Ed.2d 614 (1982). A defendant raising such a claim, however, must prove not only that the informant, rather than being a passive listener, took some action "designed deliberately to elicit incriminating

remarks," *Kuhlmann v. Wilson*, —— U.S. ——, 106 S.Ct. 2616, 2630, 91 L.Ed.2d 364 (1986), but also that the informant did not merely volunteer information to the police but rather had a substantial relationship with the authorities such that the informant's questioning should be considered governmental interrogation. *Surridge*, 687 F.2d at 252–54.

■ Robinson in testimony at trial admitted he was attempting to get Bauer to write about the stabbing, transcript at 1012, 1014, but he denied that the government asked him to so proceed. *Id.* at 933, 934. Robinson further testified that an officer at the jail requested that he stop writing notes to Bauer, *id.* at 934, and that the FBI merely indicated that it wasn't going to interfere with the correspondence. The cooperation of jail guards in transmitting some of the notes between Robinson and Bauer was not government involvement in or special facilitation of the Bauer-Robinson relationship; it was the standard practice at Sandstone. *Id.* at 839–40. The facts before us thus are similar to those in *Surridge, supra*, where the police knew that an individual visiting the defendant in jail was going to try to learn the whereabouts of the stolen money. This court in *Surridge* concluded that mere knowledge was not a sufficient government involvement to implicate fifth or sixth amendment concerns, 687 F.2d at 255; and in light of that holding we cannot find that the incriminating notes passed by Bauer to Robinson were obtained by the government in violation of Bauer's constitutional rights.

■ The incriminating statements introduced through the testimony of Williams require a different analysis. Williams admitted at trial that he had been asked by a jail officer to see what he could find out about the stabbing, transcript at 1196, 1215, and the conversations to which Williams testified clearly show that he deliberately provoked two incriminating statements by Bauer—"Man, this * * * is going to a nightmare," and "I didn't mean for him to die." *Id.* at 1207–09. Under the harmless error rule, however, admission of these statements is not a ground for reversal if there remains "overwhelming inde-

pendent evidence" of Bauer's guilt. *See Flittie,* 755 F.2d at 944 (quoting *United States v. Packer,* 730 F.2d 1151, 1157 (8th Cir.1984)). The statements at issue here were almost cryptic compared to Bauer's stark admission to another inmate that he killed Finley for $5,000, and we believe it unlikely that such cumulative declarations had a major impact on the jury in light of a record which, considered as a whole, also included the testimony of eyewitnesses that Bauer committed the stabbing, ran from the scene, and washed blood off his hands. *See Flittie,* 755 F.2d at 944. We decline to reverse Bauer's convictions on this ground.

## IV.

Lynch argues that the trial court by sustaining numerous evidentiary objections improperly prevented him from fully developing the untruthfulness and bias of the prosecution's witnesses. In particular, Lynch argues that he could have shown that the inmates who testified for the prosecution, many of whom when initially questioned by authorities denied having knowledge relevant to the stabbing, picked up prison gossip and fabricated plausible stories with the hope that, by "cooperating" with the government, they would receive favorable treatment (for example, transfers and early releases).

A careful review of the record reveals that Lynch indeed was allowed to explore extensively all aspects of this theory. The district court limited Lynch's presentation only when, for example, Lynch sought to introduce extrinsic evidence of prior conduct of the witnesses bearing on their veracity—evidence inadmissible under Rule 608(b) of the Federal Rules of Evidence—or sought to impeach witnesses with prior inconsistent statements without having given them the opportunities to explain required by Rule 613(b) of the Federal Rules of Evidence. With regard to the latter point, Lynch argues that the court erred in finding the foundations for the inconsistent statements inadequate under the "relaxed" requirements of Rule 613(b) or, in the alternative, that the court erred in refusing to allow the recall of prosecution witnesses so

foundations could be laid. Lynch, however, cites no precedent holding that the foundation requirement may be so relaxed that counsel need not inform the witness of either the time, place, or circumstances of the alleged inconsistent statement; and the district court's refusal to allow recall of certain witnesses was based on considerations of judicial efficiency that we cannot second-guess, given the extensive discussions in the record of the logistical difficulties of dealing with inmate witnesses.

■ The district court's limitations on Lynch's cross-examination served only to foreclose litigation of collateral issues and thus to prevent delay and confusion. Whether Rule 608(b) permits inquiry into, for example, prior instances of untruthfulness by a witness, is not at issue here. Rule 608(b) by its own terms merely allows—but does not require—a court to permit such cross-examination, *e.g., Crimm v. Missouri Pacific Railroad,* 750 F.2d 703, 707 (8th Cir.1984); and a district court may exercise its discretion to reject otherwise proper questioning as being, for example, more prejudicial than probative under Rule 403 of the Federal Rules of Evidence. *E.g., United States v. Atwell,* 766 F.2d 416, 419–20 (10th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 251, 88 L.Ed.2d 259 (1985). Reversal is warranted only where an abuse of discretion leads to prejudice. *United States v. Peyro,* 786 F.2d 826, 828 (8th Cir.1986). The district court in this case did not completely shut off any line of questioning that Lynch wished to pursue; and in view of the broad inquiry permitted, we cannot find an abuse of discretion with regard to any of the individual questions disallowed. *See United States v. Garcia,* 647 F.2d 794, 795 (8th Cir.), *cert. denied,* 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981); *cf. United States v. Wilson,* 665 F.2d 825, 828 (8th Cir.1981) (no abuse of discretion in foreclosing inquiry about witnesses' releases to a halfway house and on bond pending trial respectively when defendant had cross-examined witnesses regarding favorable treatment and no such treatment was revealed), *cert. denied,* 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982).

## V.

■ Finally, Lynch's and Bauer's arguments that the evidence was insufficient to support their convictions cannot stand in the face of the testimony outlined above, which must, of course, be taken in the light most favorable to the jury's verdict. *See United States v. Robinson*, 782 F.2d 128, 129 (8th Cir.1986). We have carefully considered all additional points raised by Lynch and Bauer, and we find no reversible error as to either defendant.

The convictions are affirmed.